# In the United States Court of Federal Claims

No. 11-153C

(E-Filed Under Seal:  December 11, 2012)
(Reissued with Redactions:  December 21, 2012)[1]

_____

|  |  |
|---|---|
| CONFIDENTIAL INFORMANT 59-05071, | ) ) ) RCFC 37(a)(3) Motion to Compel |
|  | ) Production of Documents; Attorney-Client |
| Plaintiff, | ) Privilege; Work-Product Doctrine; |
|  | ) Deliberative Process Privilege; |
| v. | ) Investigatory Files Privilege |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

_____

T. Scott Tufts, Maitland, FL, for plaintiff.

J. Reid Prouty, Senior Trial Counsel, and Jessica R. Toplin, Trial Attorney, with whom
were Stuart F. Delery, Acting Assistant Attorney General, and Jeanne E. Davidson,
Director, Commercial Litigation Branch, Civil Division, United States Department of
Justice, Washington, DC, for defendant.

OPINION

HEWITT, Chief Judge

    The parties dispute whether various assertions of privilege by the United States
(the government or defendant) constitute a proper basis for withholding from discovery
certain documents requested by Confidential Informant 59-05071 (Pat Doe or plaintiff).
See Order of Oct. 19, 2012, Docket Number (Dkt. No.) 38, at 2 (filed under seal).
Pursuant to the court's Order of October 19, 2012, the parties have briefed their dispute.

_____

    [1] The unredacted version of this Opinion was filed under seal on December 11, 2012,
Docket Number (Dkt. No.) 55.  Redactions in this version, reissued for publication, are indicated
by three consecutive asterisks within brackets ([***]).

See id. (setting schedule for such briefing).  Now before the court[2] are Confidential
Informant 59-05071's Motion to Compel Production of Documents (plaintiff's Motion or

---

[2] While this Opinion was being finalized, the court received on December 6, 2012
plaintiff's Notice of Filing in Support of Plaintiff's Pending Motion to Compel Production of
Documents and Other Relief (plaintiff's Notice or Pl.'s Notice), Dkt. No. 54.  The court made no
provision for the filing of this document, nor did plaintiff seek leave for filing its Notice.
Nonetheless, the court infers a request for leave in plaintiff's submission of its Notice and
GRANTS leave to allow plaintiff to file the document under seal.

Confidential Informant 59-05071's Motion to Compel Production of Documents
(plaintiff's Motion or Pl.'s Mot.), Dkt. No. 42, and Confidential Informant 59-05071's
Memorandum of Law in Support of Motion to Compel Production of Documents (plaintiff's
Memorandum or Pl.'s Mem.), Dkt. No. 43, specifically discussed plaintiff's request for
compelled production of documents related to plaintiff's second production request--which was
focused on undercover activities of Internal Revenue Service special agents targeting taxpayers
based on information provided by plaintiff.  See Pl.'s Mot. 2-3; Pl.'s Mem. 12-13.  Plaintiff
alleged that defendant objected to many of the requests on the basis of privilege, see Pl's Mem.
12, but, as this Opinion explains, defendant has not properly asserted privilege claims with
respect to any withheld documents responsive to plaintiff's second production request, see infra
Part III.B.  Accordingly, the court has granted plaintiff's Motion with respect to such documents
and ordered defendant to produce them immediately, as provided in this Opinion.  See infra Parts
III.B, IV.

Plaintiff's Notice contains redacted versions of documents not previously produced,
which were produced for the first time as a result of recently conducted depositions of Internal
Revenue Service employees or former employees, and which plaintiff alleges had been
improperly withheld by defendant.  Specifically, a series of memorandums was produced to
plaintiff during the deposition of former undercover program manager [***], see Pl.'s Notice Ex.
B (Memorandums of Activity), although plaintiff had explicitly requested such memorandums in
its second request for production, see Pl.'s Mem. 12; id. at Ex. C (Pl.'s 2d Set of Reqs. for
Produc.) 5.  According to plaintiff, defendant had previously "stated that but-for various asserted
privileges, [no such documents] existed."  Pl.'s Notice 5; see Pl.'s Mem. Ex. D (Def.'s Motion
Objections & Resps. to Pl.'s 2d Reqs. for Produc.) 4 (stating in response to plaintiff's request for
"Memoranda of Activity" that, "subject to the foregoing objections, [based on privilege,
irrelevance, and undue burden,] no such documents exist").  In addition, several pages of
redacted documents were produced to plaintiff following a deposition of then-special agent
[***].  See Pl.'s Notice Ex. C (documents pertaining to undercover work of [***] in his role as
special agent).  Counsel for defendant acknowledged that additional documents contained on
[***]'s hard drive were withheld pursuant to 26 U.S.C. § 6103(h), which governs release of
confidential federal tax and information returns and return information in judicial proceedings.
See id. at Ex. D (email from Reid Prouty to Scott Tufts).  Plaintiff's Notice also restates a need
for certain redacted information including a paragraph of an e-mail chain, which plaintiff has
attached to its Notice as Exhibit A.  See Pl.'s Notice 3 n.1, 9 (discussing redacted "summary
from [***]" in e-mail chain).  The e-mail chain attached by plaintiff as Exhibit A to its Notice

Pl.'s Mot.), Dkt. No. 42, and Confidential Informant 59-05071's Memorandum of Law in Support of Motion to Compel Production of Documents (plaintiff's Memorandum or Pl.'s Mem.), Dkt. No. 43, both filed October 25, 2012; Defendant's Opposition to Motion to Compel (defendant's Response or Def.'s Resp.), Dkt. No. 52, filed November 7, 2012; and Confidential Informant 59-05071's Reply to Defendant's Opposition to Motion to Compel Production of Documents (plaintiff's Reply or Pl.'s Reply), Dkt. No. 53, filed November 13, 2012.  Each of these documents has been filed under seal.

Specifically, plaintiff moves the court to compel the production of:  (1) documents that were identified on the government's privilege log dated July 16, 2012 (the privilege log), which plaintiff alleges were improperly withheld as privileged; (2) documents that were responsive to plaintiff's first and second requests for production but not listed on the

---

was included in the redacted documents produced by defendant to the court and is addressed at Part III.C of this Opinion.

With respect to the newly produced documents, the court agrees with plaintiff that such documents were improperly withheld and understands such documents to be of the type encompassed by the second category of documents requested in plaintiff's Motion, those documents that were responsive to plaintiff's first or second production requests but not identified in the privilege log.  Moreover, the court shares plaintiff's concern that if these documents were improperly withheld, it is likely that others were improperly withheld, as well.

As ordered and further provided in Part III.B and Part IV of this Opinion, defendant SHALL IMMEDIATELY produce to plaintiff any additional documents responsive to plaintiff's second production request that have been withheld but not identified on defendant's privilege log of July 16, 2012.  To the extent that defendant continues to withhold any such documents on the basis of privilege--including those documents on [***]'s hard drive which defendant has stated are protected pursuant to 26 U.S.C. § 6103(h)--defendant SHALL, as ordered and further provided in Part III.B and Part IV of this Opinion, identify the privilege(s) asserted with respect to each such document and provide a sufficient description of each such document to allow plaintiff to assess the privilege(s) claimed and sufficient information to meet any other requirements of such privilege(s) asserted.  Moreover, defendant SHALL DELIVER to the court as provided in Part IV of this Opinion copies of all documents--including those on [***]'s hard drive--that it has not previously submitted to the court and that it has withheld although responsive to plaintiff's second production request.

The parties are reminded of their obligations pursuant to Rule 26 and Rule 37 of the Rules of the United States Court of Federal Claims (RCFC).  In particular, Rule 26(g)(3) provides for sanctions for improper certification of discovery responses or objections, and Rule 37(b)-(d) provides for a number of discovery-related sanctions.  In addition, RCFC 37(a)(5)(C) provides that when a motion to compel production is granted-in-part and denied-in-part, as in this case, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Plaintiff may file such a motion as further provided in Part IV.

privilege log, which plaintiff alleges were improperly withheld; and (3) redacted portions of documents that were produced, which plaintiff alleges were improperly omitted from the privilege log so as to preclude a "meaningful review." Pl.'s Mot. 1-3. For the reasons stated below, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART.

I.      Background

The facts upon which this case arose are described in this court's opinion of November 22, 2011, in which the court denied defendant's motion to dismiss plaintiff's claims. See Confidential Informant 59-05071 v. United States (court's Opinion or Op.), No. 11-153C, at 2-4 (Fed. Cl. Nov. 22, 2011) (filed under seal), Dkt. No. 16. With respect to plaintiff's Motion, the following facts are of particular relevance.

Plaintiff served as a confidential informant to the Internal Revenue Service (IRS) pursuant to a reward agreement executed in February 2002 (the reward agreement). See id. at 2; Pl.'s Mem. 2-3. According to plaintiff, the IRS asked plaintiff to amend the reward agreement in the spring of 2005 to, among other changes, designate IRS special agents Casimir P. Tyska (Agent Tyska) and Crystal Ashley as the IRS agents to receive information from plaintiff. Op. 2-3; Pl.'s Mem. 3-4. Plaintiff signed such an amendment. See Op. 2 n.1 (stating that, although the amendment agreement signed by plaintiff was dated June 15, 2005, plaintiff maintains that the IRS requested the amendment prior to May 3, 2005). In May of 2005, plaintiff provided proof of identity at the request of the IRS, as well as "new information concerning [***]." See Op. 3 (internal quotation marks omitted); Pl.'s Mem. 3.

Plaintiff alleges that, in the months following receipt of this new information by the IRS, Agent Tyska attempted to abrogate the reward agreement by trying to convince plaintiff to sign IRS Form 211 (Application for Award for Original Information) and, in December 2005, by trying to persuade plaintiff to execute a second amendment to the reward agreement. See Op. 3; Pl.'s Mem. 3, 16. According to plaintiff, this second proposed amendment would have incorporated the changes introduced by the first amendment and, significantly, would have also changed the reward computation and the identity protection provisions of the reward agreement. Op. 3; see Pl.'s Mem. 17 (discussing the "new" amendment). Plaintiff contends that Agent Tyska threatened that the IRS would not perform under the reward agreement unless these demands were met. Op. 4; Pl.'s Mem. 16. Plaintiff also alleges that Agent Tyska attempted to persuade plaintiff to proceed without counsel by stating that plaintiff's counsel was incompetent. Op. 3-4; Pl.'s Mem. 3. In response to these actions, plaintiff states that it made demands for adequate assurances of performance in 2006, which the government claims were not received. Pl.'s Mem. 2; Pl.'s Reply 3.

Plaintiff filed this suit in 2011, alleging that Agent Tyska's actions constituted an anticipatory breach of the reward agreement and a breach of the implied duty of good faith and fair dealing inherent in such an agreement.  Op. at 4; Pl.'s Mem. 2-3.  Plaintiff also seeks an accounting pursuant to the reward agreement.  Pl.'s Mem. 3.

During the course of this litigation, plaintiff made two requests for production. Plaintiff's first request, served on March 27, 2012, contained twenty-eight items.  Pl.'s Mem. 4, 11; see id. at Ex. A (Pl.'s 1st Req. for Produc.) 4-7.[3]  Defendant's response to plaintiff's request indicated that defendant objected to production of certain documents, which it argued were protected by the "attorney-client privilege, work-product doctrine, or any other privileges, doctrines or immunities such as the deliberative process privilege or the investigative file privilege."  Pl.'s Mem. Ex. B (Def.'s Objections and Resps. to Pl.'s First Set of Reqs. for Produc. (defendant's Production Responses I or Def.'s Produc. Resps. I) 2; see also Pl.'s Mem. 4.  On or about July 16, 2012, defendant produced the privilege log, which identified fifty-four documents that defendant had withheld as privileged.  Pl.'s Mem. 4; see id. at Ex. E (privilege log).  The protections claimed by defendant with respect to these documents included:  attorney-client privilege, work-product protection and deliberative process privilege.  See Pl.'s Mem. Ex. E (privilege log) (listing privileges claimed with respect to each document identified as privileged). The privilege log also indicated that two documents were withheld pursuant to 26 U.S.C. § 6103(h) (2006)--which governs disclosure of otherwise confidential tax returns and return information in judicial proceedings.  See id. at 7-8 (identifying Document Nos. 47 and 53 as withheld pursuant to § 6103(h)); Pl.'s Mem. Ex. B (Def.'s Produc. Resps. I) 3 (stating that defendant will withhold information subject to § 6103(h) unless it fits an exception and identifying the exception for information directly related to resolving a lawsuit as the only potentially applicable exception with respect to plaintiff's requests); 26 U.S.C. § 6103(h)(4)(B) (allowing for disclosure when "the treatment of an item reflected on [a] return is directly related to the resolution of an issue in the proceeding").

Plaintiff served a second request for production on August 8, 2012, containing five additional items, which "focused on referenced items in certain reports of Special Agents" relating to purported "undercover operations in the investigation of [***]."  Pl.'s Mem. 12; see id. at Ex. C (Pl.'s 2d Set of Reqs. for Produc.) 3-5.  Defendant objected to plaintiff's second request on the basis that the requested documents were protected by the attorney-client privilege, work-product doctrine, deliberative process privilege and investigative files privilege.  Pl.'s Mem. Ex. D (Def.'s Objections and Resps. to Pl.'s Second Reqs. for Produc. (defendant's Production Responses II or Def.'s Produc. Resps. II)) 2-5.  Defendant also asserted that, with respect to one item contained in plaintiff's second production request, responsive documents may be protected by 26 U.S.C. § 6103(h).  Id. at 4.

---

[3] The court cites to the exhibits to plaintiff's Memorandum by the original page numbers on each individual exhibit.

Of the documents produced by defendant in response to plaintiff's production requests, some contained redactions, which were not identified or described on the privilege log.  Pl.'s Mem. 14.

Although the parties have attempted to resolve their dispute over whether the documents withheld as privileged and redacted portions of documents are, in fact, protected, the parties have been unsuccessful at resolving this dispute on their own.  <u>See id.</u> at 5.

II.     Legal Standards

        A.      Motions to Compel Production

The court has broad discretion to manage discovery in accordance with the Rules of the United States Court of Federal Claims (RCFC).  <u>See, e.g.</u>, <u>Brubaker Amusement Co. v. United States</u>, 304 F.3d 1349, 1356 (Fed. Cir. 2002) ("The standard of review on discovery matters is whether an abuse of discretion occurred.").  Pursuant to Rule 37(a) of the RCFC, a motion to compel production or inspection is appropriate when the nonmoving party fails to permit inspection of a document, if such inspection was properly requested in accordance with the RCFC.  <u>See</u> RCFC 37(a)(3)(B)(iv).  Rule 34, which governs production requests for inspection or copying of documents, allows a party to request production of any document within the scope of discovery.  <u>See</u> RCFC 34(a).  A document is within the scope of discovery if it is "nonprivileged" and "relevant to any party's claim or defense."  RCFC 26(b).  Therefore, a motion to compel production may be granted in the court's discretion when the moving party has submitted a proper request for a nonprivileged, relevant document, and the nonmoving party has failed to produce such document for inspection.

        B.      Relevant Protections Against Production

Pursuant to the RCFC, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the [withheld materials] . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  RCFC 26(b)(5)(A).  Additional standards applicable to specific privileges and protections are discussed in greater detail below.

        1.      Attorney-Client Privilege

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  <u>Genentech, Inc. v. U.S. Int'l Trade Comm'n</u>, 122 F.3d 1409, 1415 (Fed. Cir. 1997).  Whether the

attorney-client privilege applies depends on the facts and circumstances of a particular case.  Upjohn Co. v. United States, 449 U.S. 383, 396 (1981); In re Spalding Sports Worldwide, Inc. (Spalding Sports), 203 F.3d 800, 805 (Fed. Cir. 2000).  This protection encompasses "the attorney's thought processes and legal recommendations."  Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985).

The attorney-client privilege does not extend to "communications made for the purpose of getting advice for the commission of a fraud or crime."  United States v. Zolin, 491 U.S. 554, 563 (1989) (internal quotation marks omitted).  This exception--the so-called crime-fraud exception--may be invoked if the party challenging the assertion of attorney-client privilege "make[s] a prima facie showing that the communication [at issue] was made 'in furtherance of' a crime or fraud."[4]  Spalding Sports, 203 F.3d at 807; see e.g., Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1329-31 (Fed. Cir. 2011) (upholding district court's application of the crime-fraud exception when spoliation of evidence was pursuant to advice from counsel and constituted a misdemeanor under California law).  To make a prima facie showing of fraud, the party invoking the exception must allege facts sufficient to support a finding that it justifiably relied on a misrepresentation by the party asserting attorney-client privilege, that such misrepresentation was material and made with intent to deceive, and that the party invoking the exception suffered injury as a result of his actions in reliance on the misrepresentation.  See Spalding Sports, 203 F.3d at 807 (citing Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1069-70 (Fed. Cir. 1998)).

The United States Court of Appeals for the Federal Circuit has indicated that the crime-fraud exception is broad enough to encompass documents that are "incident" to alleged "fundamental misconduct."  In re United States, 321 F. App'x 953, 956 (Fed. Cir. 2009) (per curiam) (unpublished) (internal quotation marks omitted); see, e.g., Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc) (stating that in a patent case, "[a] finding of inequitable conduct may . . . prove the crime or fraud exception to the attorney-client privilege").  However, for the crime-fraud exception to apply in the context of misconduct, the communication or document sought must have been created in furtherance of the misconduct alleged; it is not enough that it is relevant to showing the misconduct.  Cf. In re United States, 321 F. App'x at 956 (affirming the decision by the United States Court of Federal Claims that certain documents should be produced because they constituted ex parte contacts in breach of a government contract, the misconduct alleged in the case).

---

[4] In determining whether the crime-fraud exception to the attorney-client privilege applies, a court has discretion to conduct in camera review of the communications at issue--if a showing has been made "of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  United States v. Zolin, 491 U.S. 554, 572 (1989) (internal quotation marks and citation omitted).

2.    Work-Product Doctrine

Pursuant to RCFC 26(b)(3), "documents and tangible things that are prepared in anticipation of litigation" are generally protected from discovery.  RCFC 26(b)(3)(A). However, such materials are discoverable when the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," and the materials are otherwise discoverable.  Id.  The "substantial need" exception to the work-produce doctrine applies only to "discovery of factual or non-opinion work product and requires a court to protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney."  In re EchoStar Commc'ns Corp. (EchoStar), 448 F.3d 1294, 1302 (Fed. Cir. 2006) (internal quotation marks omitted) (discussing work-product doctrine under Federal Rule of Civil Procedure 26(b)(3)).[5]

3.    Deliberative Process Privilege

The deliberative process privilege, a subset of executive privilege, protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  NLRB v. Sears, Roebuck & Co. (Sears), 421 U.S. 132, 150 (1975) (internal quotation marks omitted); see also Kaiser Aluminum & Chem. Corp. v. United States (Kaiser), 141 Ct. Cl. 38, 45-49, 157 F. Supp. 939, 944-47 (1958).  To the extent that facts or investigative information included in a document do not reveal the government's decision-making processes, such information is beyond the scope of the privilege and is therefore discoverable.  See In re United States, 321 F. App'x at 959 (citing EPA v. Mink, 410 U.S. 73, 87-88 (1973)); Pac. Gas & Electric Co. v. United States (PG&E I), 70 Fed. Cl. 128, 134 (2006), modified on reconsideration by 71 Fed. Cl. 205 (PG&E II) (2006); see also CACI Field Servs., Inc. v. United States (CACI), 12 Cl. Ct. 680, 687 (1987) (stating that factual statements are beyond the scope of executive privilege).

Invocation of the deliberative process privilege is a three-step process, and the burden is on the government to show that the privilege protects the documents that it seeks to withhold from discovery.  Walsky Constr. Co. v. United States (Walsky), 20 Cl. Ct. 317, 320 (1990).  First, to invoke the privilege, the government must assert the

---

[5] The RCFC generally mirror the Federal Rules of Civil Procedure (FRCP).  See RCFC 2002 Rules Committee Note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").  Rule 26(b)(3) of the RCFC is substantially similar to Rule 26(b)(3) of the FRCP.  Compare RCFC 26(b)(3), with FRCP 26(b)(3).  Therefore, the court relies on cases interpreting work-product doctrine under both the RCFC and the FRCP.

privilege by declaration or affidavit.  Id. at 320 n.3.  The privilege can be asserted by the head of the agency with control over the requested document, after personal consideration, or by one to whom such authority to invoke the deliberative process privilege on the agency's behalf has been delegated.  See Marriott Int'l Resorts L.P. v. United States (Marriott Int'l), 437 F.3d 1302, 1308 (Fed. Cir. 2006) (holding that assertion of the privilege can be delegated); cf. Walsky, 20 Cl. Ct. at 320 (discussing process of assertion).  Second, the officer invoking the privilege "must state with particularity what information is subject to the privilege." Walsky, 20 Cl. Ct. at 320; see also RCFC 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must . . . describe the nature of the documents . . . not produced or disclosed--and do so in a manner that . . . will enable other parties to assess the claim.")  Finally, "the agency must supply the court with precise and certain reasons for maintaining the confidentiality of the requested document."[6] Walsky, 20 Cl. Ct. at 320 (internal quotation marks omitted).

In addition to these procedural requirements, two substantive requirements also must be met.  First, the documents for which the government seeks protection must be shown to "record pre-decisional agency conduct," meaning that they are "antecedent to the adoption of an agency policy." Id. (internal quotation marks omitted); Dairyland Power Coop. v. United States (Dairyland), 77 Fed. Cl. 330, 337 (2007); see In re United States, 321 F. App'x at 958-59 (stating that "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" are pre-decisional (internal quotation marks omitted)).  Second, the government must show that the documents it seeks to protect "contain decisional information," meaning that they "make[] recommendations or express[] opinions on legal or policy matters." Walsky, 20 Cl. Ct. at 320 (internal quotation marks omitted); see also In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337.

---

[6] Although "[n]one of the decisions binding on this court . . . recognizes [the 'precise and certain reasons' requirement] as an independent condition for invoking the deliberative process privilege," Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 312 n.7 (2002) (internal citations omitted), this requirement is well-established in persuasive federal case law, see, e.g., United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980); Anderson v. Marion Cnty. Sheriff's Dep't, 220 F.R.D. 555, 561 (S.D. Ind. 2004); Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D. Wash. 2000); Scott Paper Co. v. United States, 943 F. Supp. 489, 497 (E.D. Pa. 1996); Resolution Trust Corp. v. Diamond, 773 F. Supp. 597, 604 n.5 (S.D.N.Y. 1991).  The requirement also has a history of being applied in this court.  See, e.g., Dairyland Power Coop. v. United States, 77 Fed. Cl. 330, 336-37 (2007) (stating that the requirement, along with the "particularity" requirement, is echoed in RCFC 26(b)(5)); Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726, 728 (2006); Marriott Int'l Resorts, L.P. v. United States, 61 Fed. Cl. 411, 417 (2004), rev'd on other grounds, 437 F.3d 1302 (Fed. Cir. 2006); Abramson v. United States, 39 Fed. Cl. 290, 294 (1997).

After the government has shown that both the procedural and substantive requirements of the deliberative process privilege have been met, the court must balance the competing interests of the parties to determine whether the plaintiff has overcome the privilege by a showing of compelling need.  Marriott Int'l, 437 F.3d at 1307; see also CACI, 12 Cl. Ct. at 687 ("The executive privilege . . . is a qualified one.  The privilege can be overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure." (internal citation omitted)).

4. Investigatory Files Privilege

"The investigatory files privilege protects investigatory files compiled for law enforcement purposes."  R.C.O. Reforesting v. United States, 42 Fed. Cl. 405, 408 (1998) (citing Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341-44 (D.C. Cir. 1984) and Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991)).  The privilege is intended "'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'"  Id. (quoting In re Dep't of Investigation, 856 F.2d 481, 484 (2d Cir. 1988)).  However, the privilege must yield "if a litigant's need for the information outweighs the public interest in nondisclosure."  Id. at 409 (citing In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988)).

5.      26 U.S.C. § 6103

Federal tax returns and return information are generally confidential.  26 U.S.C. § 6103(a).  However, a return or return information may be disclosed in a federal judicial or administrative proceeding pertaining to tax administration in certain situations.  Id. § 6103(h)(4).  Such situations include when the taxpayer is a party to the proceeding and when the treatment of an item on a return is "directly related to the resolution of an issue in the proceeding."  Id. § 6103(h)(4)(A)-(B).

III.    Discussion

A.      Documents Identified in the Privilege Log (Document Nos. 1-54)

 Plaintiff contends that its "showing of misconduct by the Government warrants production of all of the[] withheld documents [listed on the privilege log]."  Pl.'s Mot. 2.  Plaintiff further contends that "Defendant's Privilege Log is not reasonably specific to determine how one is to apply the privileges asserted," id.; see Pl.'s Reply 2 (stating that the privilege log "fails to sufficiently articulate the grounds by which a privilege may be properly asserted"), and that defendant is attempting to "shield[] itself with what are nothing more than blanket assertions" of privileges, Pl.'s Reply 1-2.  Defendant observes that plaintiff "does not identify the specific documents it seeks in any one place, but the

majority of documents referenced by the privilege log are noted at some point in the motion." Def.'s Resp. 1 n.1.  Although plaintiff's Memorandum appears to focus primarily on documents withheld under the deliberative process privilege, see, e.g., Pl.'s Mem. 5 (stating that "documents identified in [the privilege log] should be produced because the deliberative process privilege cannot shield the government's documents from disclosure in light of its serious misconduct") (emphasis and capitalization omitted), the court understands plaintiff's Motion to encompass all of the documents identified on the privilege log, except for Document No. 53, see Pl.'s Reply 1 n.1 ("[D]ocuments that presumably have nothing to do with this case, such as Document #53[,] . . . are not [at] issue."); see also Pl.'s Mem. Ex. E (privilege log) 8 (identifying Document No. 53 as "Not Regarding This Case," the only document identified on the privilege log as irrelevant).  The court considers each document in turn.

       1.     Documents Withheld Under the Attorney-Client Privilege

Document Nos. 1-23, 25, 27d, 28, 33b-c, 33f, 36, 38-41, 46, 48, 50 and 54 were withheld by defendant as being protected by the attorney-client privilege.[7]  See Pl.'s Mem. Ex. E (privilege log) 1-8.  Attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice," Genentech, Inc., 122 F.3d at 1415, including documents that reveal "the attorney's thought processes and legal recommendations," Zenith Radio Corp., 764 F.2d at 1580.  In asserting this privilege, defendant is required to "describe the nature of the [withheld materials] . . . in a manner that, without revealing information itself privileged or protected, will enable [plaintiff] to assess the claim."  RCFC 26(b)(5)(A).

Plaintiff appears to argue that these documents should not have been withheld, either because they were not within the scope of attorney-client privilege or because they were within the crime-fraud exception to the privilege.  See Pl.'s Mem. 5-8 (discussing crime-fraud exception), 10 ("This is not to say that the mere identification of any e-mail involving [government attorney Holly] Hagen necessarily admits to a confidential communication, as the attorney-client privilege . . . is not absolute . . . .").

---

[7] Where more than one document is listed in the "Document Description/Subject of Email Correspondence" column in the privilege log (such as when a document contains attachments), the court refers to such a document by its document number, followed by a letter to indicate its sequence within the entry for that document number on the privilege log.  See, e.g., Pl.'s Mem. Ex. E (privilege log) 6 (listing six individual documents under the entry for Document No. 33, which the court refers to as Document Nos. 33a-33f).  This convention has not been used with respect to individual e-mails identified on the privilege log as being part of an e-mail chain; instead, the court refers to such e-mail chains, in their entirety, by document number.  See, e.g., id. at 1 (listing under the entry for Document No. 4 five individual e-mails contained in an e-mail chain with the subject "Contract," which the court refers to collectively as Document No. 4).

Plaintiff also argues that "the privilege log does not provide sufficient information to assist one to know for sure than any asserted privilege has been validly asserted," Pl.'s Mem. 9 (emphasis added), and states that, regarding documents for which the attorney-client privilege has been claimed, the privilege log is inadequate in particular with respect to Documents 1-22, 36-38 and possibly Documents 25, 28 and 40, see Pl.'s Reply 4-5; see also Pl.'s Mem. 6, 9-11.  In response to plaintiff's general allegation that the privilege log is inadequate, defendant states that "the alleged inadequacies . . . were not raised, except in the broadest way, by plaintiff's counsel." Def.'s Resp. 5.  Defendant defends the amount of detail it chose to provide in the privilege log by stating that "[w]ere more detail sought upon the subjects, it could have potentially been provided, but . . . the danger in too detailed a privilege log, of course, is that it would disclose the very information that was sought to be privileged." Id.  Defendant argues that in camera review is not the appropriate way to address the question of whether the privilege log is adequate.  Id.  Defendant appears to base this argument on its assertions suggesting that it could have provided greater detail about the documents listed in the privilege log if plaintiff had asked with greater specificity.  See id.

The court agrees with plaintiff that defendant has not adequately described the nature of the materials identified in the privilege log as withheld pursuant to the attorney-client privilege.  See RCFC 26(b)(5)(A).  Although defendant has provided the dates of the communications (when known), names of the authors and recipients, and the subjects of e-mail correspondence and titles of documents, Def.'s Resp. 5; see Pl.'s Mem. Ex. E (privilege log), defendant has not provided any information relevant to whether the withheld communications were for the purpose of obtaining legal advice, and therefore within the scope of the privilege.  The court agrees with defendant, however, that in camera review of the documents is not the appropriate resolution of this issue at this juncture.  Accordingly, defendant SHALL FILE, at or before 5:00 p.m. Eastern Standard Time (EST) on Wednesday, December 19, 2012, as further provided herein, a notice with the court that provides information sufficient to permit plaintiff to assess whether the documents withheld were within the scope of the attorney-client privilege, specifically, information indicating that the communications contained in the documents were made for the purpose of obtaining legal advice.  See infra Part IV.

Because defendant has not properly asserted the attorney-client privilege, the court does not reach at this time the issue of whether any of the documents listed on the privilege log as withheld by defendant pursuant to the privilege would fall within the crime-fraud exception.

2.    Documents Withheld Under the Work-Product Doctrine

Document Nos. 49, 51 and 52 were withheld by defendant under the work-product doctrine.  See Pl.'s Mem. Ex. E (privilege log) 7-8.  In this court, the work-product doctrine is governed by RCFC 26(b)(3), which generally protects from discovery

"documents and tangible things that are prepared in anticipation of litigation." RCFC 26(b)(3)(A). This protection can be overcome if the requesting party demonstrates a "substantial need for the materials" and that it "cannot, without undue hardship, obtain their substantial equivalent by other means." Id. However, this "substantial need" exception to the work-product doctrine does not extend to the "mental impressions, conclusions, opinions, or legal theories of an attorney." EchoStar, 448 F.3d at 1302. In asserting work-product protection, defendant is required to "describe the nature of the [withheld materials] . . . in a manner that, without revealing information itself privileged or protected, will enable [plaintiff] to assess the claim." RCFC 26(b)(5)(A).

Plaintiff alleges that defendant has attempted to "shield[] itself with . . . blanket assertions of the . . . work product privilege[]." Pl.'s Reply 1-2. Defendant does not address this allegation, except to the extent that it addresses plaintiff's general allegation that the privilege log is inadequate. See Def.'s Resp. 5 ("[W]ere more detail sought upon the subjects [of the communications listed in the privilege log], it could have potentially been provided, but . . . the danger in too detailed a privilege log, of course, is that it would disclose the very information that was sought to be privileged."). The court agrees with defendant that in camera review of the withheld documents is not the appropriate resolution of this issue at this juncture. See Def.'s Resp. 5. Accordingly, defendant SHALL include in its notice to the court to be filed at or before 5:00 p.m. EST on Wednesday, December 19, 2012, as further provided herein, information sufficient to permit plaintiff to assess whether defendant properly withheld the documents for which it claims work-product protection pursuant to RCFC 26(b)(3), specifically, information indicating that the withheld documents were prepared in anticipation of litigation and that they contain the mental impressions, conclusions, opinions or legal theories of one of defendant's attorneys. See infra Part IV.

Because, with respect to the documents listed in the privilege log, defendant has not properly asserted protection under the work-product doctrine as contained in RCFC 26(b)(3), the court does not reach at this time the issue of whether plaintiff has demonstrated substantial need sufficient to overcome the protection.

3.      Documents Withheld Pursuant to the Deliberative Process Privilege

Document Nos. 24a-b, 26a-b, 27a-c, 29-32, 33a, 33c-e, 34-35, 37 and 42-45 were withheld by defendant as protected pursuant to the deliberative process privilege. See Pl.'s Mem. Ex. E (privilege log) 4-7. The deliberative process privilege, as a subset of executive privilege, protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150 (internal quotation marks omitted); see also Kaiser, 141 Ct. Cl. at 45-49, 157 F. Supp. at 944-47. Facts and investigative information are beyond the scope of the privilege to the extent that they do not reveal the government's decision-making process. See In re United States, 321 F. App'x at 959;

PG&E I, 70 Fed. Cl. at 134; see also CACI, 12 Cl. Ct. at 687 (stating that factual statements are beyond the scope of executive privilege). The government must meet three procedural requirements and two substantive requirements for the privilege to apply.

The three procedural requirements are: (1) assertion of the privilege, after personal consideration, by declaration or affidavit of the agency head with control over the requested document or by one to whom such authority has been delegated, see Marriott Int'l, 437 F.3d at 1308 (holding that assertion of the privilege can be delegated); Walsky, 20 Cl. Ct. at 320 & n.3; (2) a statement with particularity of what information is subject to the privilege, Walsky, 20 Cl. Ct. at 320; and (3) a statement of "precise and certain reasons for maintaining the confidentiality of the requested document," id. (internal quotation marks omitted). The substantive requirements are that the documents must be (1) pre-decisional, meaning prior to the adoption of an agency policy on the matter; and (2) deliberative, meaning that they make recommendations or express opinions on legal or policy matters for use in decision making. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.

With respect to the timing for meeting the procedural requirements, this court has previously found the government's process to be procedurally deficient when such an affidavit was executed subsequent to and in response to a motion to compel production. See PG&E I, 70 Fed. Cl. at 143. In reaching this conclusion, the court was persuaded by the decision of the United States District Court for the Southern District of Indiana in Anderson v. Marion Cnty. Sheriff's Dep't, 220 F.R.D. 555 (S.D. Ind. 2004). See id.

The Anderson court, under circumstances similar to those in the present case, stated that "the time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel." Anderson, 220 F.R.D. at 562 n.5. The Anderson court concluded that even if the affidavit filed in that case had "met the [other] requirements that establish a deliberative process privilege, the affidavit arguably [came] too late." Id. (citing Miller v. Pancucci, 141 F.R.D. 292, 300 (C.D. Cal. 1992) ("[T]he party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter.")). As this court has observed, "the purpose of the deliberative process privilege is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government, not to further the litigation strategy of counsel who apparently, as in this case, decide when it will be asserted." PG&E I, 70 Fed. Cl. at 144 (internal quotation marks and citations omitted); see also PG&E II, 71 Fed. Cl. at 208 (deciding motion for reconsideration) ("In order to possess credibility and survive scrutiny, this determination [of whether the public interest in confidentiality outweighs the public interest in disclosure] should be made by a government official at the time the government official asserts the deliberative process

privilege [during an exhaustive examination of the voluminous documents at issue]." (citing PG&E I, 70 Fed. Cl. at 143, and Marriott Int'l, 437 F.3d at 1304, 1308)).

Here, defendant asserts that the Declaration of Kathryn A. Zuba[8] (Zuba Declaration), filed in support of the government's invocation of the deliberative process privilege, "meets the requirements that this Court and others have set forth for the proper exercise of the privilege." Def.'s Resp. 6; see also id. at Ex. 1 (Zuba Declaration). However, the Zuba Declaration, dated November 6, 2012, was produced subsequent to and in response to plaintiff's Motion. Compare Def.'s Resp. Ex. 1 (Zuba Declaration) 9 (showing date of November 6, 2012), with Pl.'s Mot. 4 (showing date of October 25, 2012). No such affidavit was produced with the privilege log, in which defendant asserted deliberative process privilege with respect to Documents 24a-b, 26a-b, 27a-c, 29-32, 33a, 33c-e, 34-35, 37 and 42-45. See Pl.'s Mem. Ex. E (privilege log) 4-7 (listing documents for which deliberative process privilege was claimed). Neither was such an affidavit produced with defendant's Production Responses I or defendant's Production Responses II, although both mention the deliberative process privilege. See Pl.'s Mem. Ex. B (Def.'s Produc. Resps. I) 2-5, 7, 9-12, 14-15, 17-19, 22 (listing which of plaintiff's production requests may be subject to "other" governmental privileges or immunities, including the deliberative process privilege), Ex. D (Def.'s Produc. Resps. II) 2-5 (listing which of plaintiff's production requests may be subject to the deliberative process privilege). Therefore, because the government did not assert the deliberative process privilege in accordance with the procedural requirements, its withholding of documents pursuant to the privilege was not proper. Cf. Anderson, 220 F.R.D. at 562 n.5; PG&E I, 70 Fed. Cl. at 143.

Nonetheless, the court may "exercise[] its discretion in the circumstances of this case to afford defendant the opportunity to properly assert the deliberative process privilege over the documents it continues to withhold." PG&E II, 71 Fed. Cl. at 210.

---

[8] Kathryn A. Zuba is the acting deputy associate chief counsel for procedure and administration in the Office of Chief Counsel of the Internal Revenue Service. Def.'s Opp'n to Mot. to Compel, Dkt. No. 52, at Ex. 1 (Declaration of Kathryn A. Zuba (Zuba Declaration)) 1. She states that she has been delegated by the Commissioner of Internal Revenue the authority to claim executive privilege on behalf of the Internal Revenue Service with respect to documents or information pertaining to matters before this court. Id. at 2 (citing Delegation Order No. 30-4, attached to the Zuba Declaration as Ex. A). The court cites to the Zuba Declaration by page number instead of by paragraph number.

The court notes that the Zuba Declaration discusses documents by their Bates numbers, not by the document numbers given in the privilege log. See id. at 4-9. The court, by comparing the Bates numbers in the Zuba Declaration with the Bates numbers given in the privilege log, has matched the descriptions in the Zuba Declaration to the corresponding document numbers in the privilege log--and references the descriptions in the Zuba Declaration by document number instead of by Bates number.

The court considers, with respect to each document withheld under the deliberative process privilege, whether the Zuba Declaration sufficiently shows that the withheld documents were within the scope of the privilege.  The court also considers whether, with respect to documents of the type that the deliberative process privilege was designed to protect, plaintiff has overcome the privilege by a showing of compelling need.  See Marriott Int'l, 437 F.3d at 1307 (describing the qualified nature of the deliberative process privilege).

        a.       Determination of Whether Documents for Which Deliberative Process Privilege Has Been Claimed Are Within the Scope of the Privilege

Memorandums re:  Waiver of Limitation on Reward Payment

Document Nos. 24a-b, 26a-b, 27a-c, 33a, 33c-e and 34 are all related, being memorandums pertaining to whether the IRS limit on reward payments should be waived for purposes of the 2002 reward agreement entered into by plaintiff.  Most of these documents appear to be cover letters that accompanied other materials during various stages of the approval process.

Document Nos. 24a, 26a, 33a and 34 are each described on the privilege log as "Memorandum re:  Waiver of Limitation on Reward Payment."  See Pl.'s Mem. Ex. E (privilege log) 4, 6.  Katherine A. Zuba (Ms. Zuba) describes all four documents in nearly identical terms, stating that each is a "memorandum from [***] to be sent to the [***] concerning a waiver of limitation on reward payments."  Def.'s Resp. Ex. 1 (Zuba Declaration) 5, 7-8.  Ms. Zuba explains that such a waiver would be necessary because "the proposed agreement would allow for a reward payment higher than the limit set by the policy at the time."  Id.  Although Document Nos. 24a and 26a are each "undated, unsigned draft[s]" of this memorandum, Document Nos. 33a and 34 are each signed and dated January 29, 2002.  Id.  Inspection reveals that the contents of all four documents are substantially similar.

Second, Document Nos. 24b, 26b, 27a and 33c are each identified on the privilege log as "Memorandum to Reviewers."  See Pl.'s Mem. Ex. E (privilege log) 4-6.  Ms. Zuba describes each of these four documents as an "undated memorandum to reviewers from [***], an analyst in [***], regarding the memorandum concerning a waiver of limitation on reward payments."  Def.'s Resp. Ex. 1 (Zuba Declaration) 5-7.  These descriptions and the court's inspection reveal that all four documents are nearly identical.[9]  The "Memorandum to Reviewers" appears to have been created for distribution with the "Memorandum re:  Waiver of Limitation on Reward Payment."

---

[9] The court notes that, although these documents are nearly identical in form and content, only Document No. 33c is identified on the privilege log as protected by both the deliberative process privilege and attorney-client privilege.  See Pl.'s Mem. Ex. E (privilege log) 4-6

With respect to each of Document Nos. 24a-b, 26a-b, 27a, 33a, 33c and 34, Ms. Zuba states that the IRS claims the deliberative process privilege because the documents "reflect[] the authors' analyses of the proposed agreement, highlighting information deemed pertinent to those analyses, and a recommendation as to how the [IRS] should proceed with regard to the proposed agreement at a time prior to its execution." Id. at 5-8. Ms. Zuba's descriptions, as well as an examination of the documents themselves, indicate to the court that these are the types of documents that the deliberative process privilege is designed to protect. The documents, which pertain to the 2002 reward agreement entered into by plaintiff, were created prior to the decision to enter the reward agreement, and thus are pre-decisional. Cf. In re United States, 321 F. App'x at 958-59 (describing pre-decisional requirement); Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320. They also contain recommendations as to whether such an agreement should be entered into and on what terms, making them deliberative. Cf. In re United States, 321 F. App'x at 958-59 (describing deliberative requirement); Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320. To the extent that the documents contain factual information, the court concludes that the facts are so intertwined with the assessments being made as to fall within the scope of the privilege. Cf. In re United States, 321 F. App'x at 959 (stating that factual information, to the extent that it does not reveal the government's decision-making process, is beyond the scope of the privilege); PG&E I, 70 Fed. Cl. at 134.

Document Nos. 27b-c and 33d-e appear to be cover letters created prior to the memorandum written by [***] (Document Nos. 24a, 26a, 33a, and 34). Document Nos. 27b and 33d, each listed on the privilege log as "Memorandum re:  Waiver of Limitation on Reward Payment," see Pl.'s Mem. Ex. E (privilege log) 5-6, are each described by Ms. Zuba as "[a] memorandum dated May 1, 2001 from [***] to the [***]," Def.'s Resp. Ex. 1 (Zuba Declaration) 6-7. Ms. Zuba explains that each memorandum "regard[s] the waiver of limitation on reward payments and an assessment of the informant and informant's information." Id. From these descriptions and the court's inspection, the court concludes that Document Nos. 27b and 33d are nearly--if not precisely--identical.

Similarly, Document Nos. 27c and 33e, each also listed on the privilege log as "Memorandum re:  Limitation of Waiver on Reward Payment." See Pl.'s Mem. Ex. E (privilege log) 5-6. Ms. Zuba describes each document as "[a] memorandum dated May 1, 2001 from [***] to [***], regarding the waiver of limitation on reward payments and an assessment of the informant and informant's information." Def.'s Resp. Ex. 1 (Zuba Declaration) 6-7.

These descriptions and the court's inspection of the documents show that Document Nos. 27c and 33e are a cover letter on a packet sent by [***], containing an

---

(identifying privileges claimed with respect to each document). The court can discern no basis for this distinction.

Informant's Claim for Reward Special Agreement.  Such packet appears to have been received by [***], and then forwarded under a substantially similar cover letter (Document Nos. 27b and 33d) to [***].  Both cover letters appear to have been created for the purpose of obtaining approvals of the waiver and ultimately, of the reward agreement.  Because these documents were created prior to the execution of the reward agreement, they are pre-decisional.  Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.  As to whether the cover letters are deliberative, they contain background information and describe past preliminary assessments made about the informant and informant's information, but they do not directly state a recommendation or opinion about whether the agreement should move forward.  Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.  Nonetheless, taken as a whole and given their role in the approval process, the cover letters convey a message of recommendation by their authors with respect to whether such approval should be granted.  The court construes the cover letters as recommendations and concludes that Document Nos. 27b-c and 33d-e, like Document Nos. 24a-b, 26a-b, 27a, 33a, 33c and 34, are documents of the type that the deliberative process privilege may be invoked to protect.  The message of recommendation conveyed in the cover letters stems primarily from a brief description of facts intertwined with the descriptions of past assessments, and the court concludes that the factual assertions contained in these documents are also within the scope of the deliberative process privilege.  Cf. In re United States, 321 F. App'x at 959; PG&E I, 70 Fed. Cl. at 134.

Drafts and Revision Notes re:  2002 Reward Agreement

Document Nos. 29-32 are drafts (or notes regarding drafts) of the reward agreement signed by plaintiff in 2002.

Document No. 29 is described by Ms. Zuba as "an undated and unsigned draft 'Confidential Informant Agreement' between Pat Doe and the Internal Revenue Service," which "contains handwritten notes indicating suggested edits."  Def.'s Resp. Ex. 1 (Zuba Declaration) 6.  Inspection shows that many of these notes are numbers, which appear to correspond to the numbers handwritten on Document No. 30.  Document No. 30 is described by Ms. Zuba as "typed notes regarding a draft of the informant agreement," which "suggest[] multiple changes."  Id.  Taken together, Document Nos. 29 and 30 appear to constitute "an annotated draft" and, as Ms. Zuba asserts, to "reflect the author's thoughts on the agreement itself, to be shared with others within the [IRS], at a time when the agreement was still being drafted."  Id.; see also id. at 4 (stating that the IRS considers claiming deliberative process privilege with respect to draft documents, which "could inaccurately reflect or prematurely disclose the views of Government officials, suggesting an agency position which is, as yet, only a personal position").

Similarly, Document Nos. 31 and 32 are each described by Ms. Zuba as "[a]n undated and unsigned draft 'Confidential Informant Agreement' between Pat Doe and the Internal Revenue Service," which "contains handwritten notes indicating suggested edits." Def.'s Resp. Ex. 1 (Zuba Declaration) 7.

The court agrees with defendant that these are the types of pre-decisional and deliberative documents that the deliberative process privilege may be invoked to protect. Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.

Communications re:  Approval of 2002 Reward Agreement

Document No. 35 is described by Ms. Zuba as "[a]n unsigned letter dated January 29, 2002 from [***] to [***] regarding the draft informant agreement and approvals." Def.'s Resp. Ex. 1 (Zuba Declaration) 8.  Ms. Zuba states that the IRS "claims deliberative process privilege for the entire document as it reflects the author's memorialization of discussions with employees of the [IRS] regarding the draft agreement prior to its execution."  Id.  Inspection shows that the letter discusses issues raised with respect to an earlier draft of the informant agreement, revisions in light of those issues and the process for approving the revised agreement.  Because this document was created prior to the execution of the agreement, it is pre-decisional, and, because it represents the back-and-forth involved in preparing the final reward agreement executed in 2002, it is also deliberative.  Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.  Therefore, the court finds that Document No. 35 is of the type intended to be protected by the deliberative process privilege.

Document No. 37 is described by Ms. Zuba as "[a] memorandum dated February 21, 2002 from [***] to [***] regarding execution of the informant agreement and discussing prior approvals of the same." Def.'s Resp. Ex. 1 (Zuba Declaration) 8.  Ms. Zuba states that the IRS "claims deliberative process privilege for the entire document as it highlights information deemed pertinent to a recommendation as to how the [IRS] should proceed with regard to the proposed agreement at a time prior to its execution." Id.  The court's inspection of the memorandum shows that it is pre-decisional because it discusses the process for executing the agreement prior to its execution.  Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320. However, the court does not find that the document is deliberative.

A deliberative communication makes recommendations or expresses opinions on legal or policy matters for use in decision making.  In re United States, 321 F. App'x at 958-559; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.  This document merely discusses the logistics of approval and execution without revealing anything about the decision-making process itself.  Cf. In re United States, 321 F. App'x at 959 (stating that

factual information, to the extent that it does not reveal the government's decision-making process, is beyond the scope of the privilege); PG&E I, 70 Fed. Cl. at 134. Specifically, it states the fact of prior reviews and negotiations related to the reward agreement without disclosing their content, except to say that eight objections were raised to the original draft agreement.  There are no recommendations as to whether the revised agreement should be executed based on the prior approvals, no discussion of the substance of past objections or negotiations, and no statements of legal or policy opinions with respect to the agreement or its execution.  Although the logistical facts do reveal to some extent the chain of people whose approval was needed for the execution of the agreement, they do not reveal, for example, the criteria by which these people made decisions about whether or not to approve or enter into such an agreement, or anything else about their decision-making processes.  The court concludes that the facts in the memorandum do not reveal the government's decision-making process.  Therefore, Document No. 37 is not of the type that the deliberative process privilege protects.  The court notes, moreover, that a document that appears to be identical to Document No. 37 was produced to plaintiff with four sentences redacted.  See infra Part III.C.  Defendant has not stated why these sentences were redacted.  See id.  As further provided herein, absent an assertion by defendant of some privilege other than the deliberative process privilege with respect to the redacted portion, Document No. 37 shall be produced to plaintiff in its entirety.  See infra Part IV.

Document Related to Amendment of the Reward Agreement

Document No. 43 is described by Ms. Zuba as "an unsigned 'Amendment to Confidential Informant Reward Agreement,'" and she states that the IRS "claims deliberative process privilege for the entire agreement as it is an annotated draft of an amendment to the informant agreement that was never executed."  Def.'s Resp. Ex. 1 (Zuba Declaration) 8.  Inspection shows that this document differs from the two amendments included as exhibits to plaintiff's First Amended Complaint, Dkt. No. 18-1, at Exs. B (first amendment), and C (proposed second amendment).  The court concludes that Document No. 43 contains content contemplated by the author but ultimately rejected for inclusion in an amendment.  Therefore, the court finds that Document No. 43 is a pre-decisional and deliberative communication of the type protected by the privilege. Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.

Documents Related to Investigation of Taxpayer Activities

Document No. 42 is described by Ms. Zuba as "[a] memorandum dated November 14, 2005 from [***], Special Agent in Charge, [***], Criminal Investigation[,] to [***]." Def.'s Resp. Ex. 1 (Zuba Declaration) 8.  Ms. Zuba states that this memorandum was written "regarding possible amendments to the agreement post-execution and a summary of the activities of the taxpayers whom informant was reporting on."  Id.  Ms. Zuba states

that the IRS "claims deliberative process privilege for the entire document as it was an integral part of the deliberations in which the criminal investigation decisions were formulated, and contain[s] the special agent's opinions, conclusions, mental impressions and thought processes." Id.

Inspection of the document shows that the first paragraph contains facts about taxpayer activities that are beyond the scope of the deliberative process privilege. Cf. In re United States, 321 F. App'x at 959; PG&E I, 70 Fed. Cl. at 134. The second paragraph recounts facts about an amendment to the award agreement that had already been signed by plaintiff and a decision by the IRS to propose an additional Memorandum of Understanding to plaintiff, which had already been submitted for internal approval. These facts are likely also beyond the scope of the deliberative process privilege because, although they describe actions arising out of decisions by the IRS, they show only that, for example, a decision to propose a Memorandum of Understanding was made, not the process of how or why such a decision was made or what such a memorandum would contain. Cf. In re United States, 321 F. App'x at 959; PG&E I, 70 Fed. Cl. at 134. Such facts do not reveal the government's decision-making process. Further, although pre-decisional to the execution of a Memorandum of Understanding, the information contained in the second paragraph is not deliberative. There are no recommendations with respect to such a Memorandum of Understanding, and no presentation of opinions on the matter. Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320. The first two sentences of the third paragraph contain facts about past actions and decisions and, therefore, are also beyond the scope of the deliberative process privilege. However, the rest of the third paragraph and the fourth paragraph present opinions about the next steps that should be taken by the agency in response to the information provided by plaintiff and, therefore, contain the type of information that is protected by the privilege.

Document Nos. 44 and 45 are substantially similar to each other, with Document No. 45 appearing to be a revision of Document No. 44. Document No. 44 is dated March 16, 2007, and Document No. 45 is dated March 19, 2007. Ms. Zuba describes both documents as "unsigned memorandum[s] . . . from [***], Supervisory Special Agent, Criminal Investigation, [***], to be sent to [***] through [***], Special Agent in Charge, Criminal Investigation, [***]." Def.'s Resp. Ex. 1 (Zuba Declaration) 8-9. Ms. Zuba states that each document "regard[s] the investigation of taxpayers whom informant's information related to." Id. Ms. Zuba states that the IRS claims deliberative process privilege with respect to both documents because they were "an integral part of the deliberations in which the criminal investigation decisions were formulated, and contain the special agent's opinions, conclusions, mental impressions and thought processes." Id.

Inspection shows that the documents each contain three sections. The first section of each document provides background facts. These facts are not within the scope of the deliberative process privilege. Cf. In re United States, 321 F. App'x at 959; PG&E I, 70

Fed. Cl. at 134.  The second section of each document requests authorization for an undercover operation, and the third section of each document estimates costs of such an operation.  Cf. In re United States, 321 F. App'x at 958-59; Dairyland, 77 Fed. Cl. at 337; Walsky, 20 Cl. Ct. at 320.  Because the second section of each document contains the special agent's recommendations as to how the agency should proceed and the third section contains his opinion of the estimated costs of so proceeding, and because each document was created for use in the agency's decision-making process, the court finds that the second and third sections of each of Document Nos. 44 and 45 fall within the scope of the deliberative process privilege, but that the first section of background facts contained in each document is not protected.

> b.     Determination of Whether Plaintiff Has Shown Compelling Need Sufficient to Overcome Deliberative Process Privilege

With respect to the information that the court has determined is of the type protected by the deliberative process privilege, the court now considers whether plaintiff has shown compelling need sufficient to overcome the privilege.  In making this determination, the court weighs the competing interests of the parties to determine whether plaintiff's evidentiary need outweighs the harm to the government of disclosure.  See Marriott Int'l, 437 F.3d at 1307; CACI, 12 Cl. Ct. at 687.

Plaintiff argues that the withheld documents "go to the heart of Plaintiff's claims of misconduct and bad faith on the part of the Government."  Pl.'s Mem. 1.  Plaintiff asserts that there is "a major, inexplicable gap" between production relevant to the process of approving the 2002 reward agreement and production relevant to the process of amending the agreement.  Pl.'s Reply 9.  Specifically, plaintiff states that "there is extensive production and enumeration of items on the Defendant's Privilege Log detailing the process in 2001-2002 by which the signature on the original reward agreement was obtained . . . .  However, in stark contrast, one immediately sees that there is nothing produced as to indicate the process by which the Exhibit 'B' 2005 amendment . . . must have then been presented for signature by the designated [IRS] official."  Id. at 8 (emphasis and footnote omitted).  Plaintiff contends that its "compelling need for this documentation is evidenced by the tremendous, inexplicable gap that exists with respect to the Government's handling and obtaining of signatures for both the original reward agreement, and then any amendments thereto."  Id. at 11; see also id. at 9 (stating that production is necessary to address this "gap").

Plaintiff also contends that the government's assertions of deliberative process privilege must yield with respect to documents regarding undercover operations involving taxpayers targeted as a result of information provided by plaintiff.  See Pl.'s Mem. 12-13 (specifically mentioning Document Nos. 44-45).  Plaintiff appears to argue that compelling need for such information has been shown because defendant failed to respond to plaintiff's requests for assurance of performance pursuant to the reward

agreement and because, although plaintiff claims to have made a formal request for an accounting in December 2010 with respect to information and documentation submitted, defendant, acting through the Whistleblower Office, claims to have no record of having received such a file.  See id. at 12-13 & n.2.

Although Ms. Zuba does not state the potential harm to the government particular to the disclosure of any specific document, she argues that the disclosure of "recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer, rather than the policy or position of the agency . . . could . . . suggest[] an agency position which is, as yet, only a personal position."  Def.'s Resp. Ex. 1 (Zuba Declaration) 4.  Ms. Zuba states that such disclosures "could create public confusion."  Id.  She also argues that such disclosures "would adversely affect the [IRS]'s ability to administer and enforce the law under the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation."  Id. at 5.  As an example, she proposes that "taxpayers may choose to argue that the [IRS] must defend positions that were not adopted, or that consideration of a position not adopted demonstrates the reasonableness of a taxpayer's position."  Id.  Finally, Ms. Zuba argues that disclosure of the documents for which she has claimed the deliberative process privilege would "inhibit the frank, honest, and thorough discussion of legal and policy matters, and thus would adversely affect the quality of the [IRS]'s decisions and policies."  Id. at 4-5; see also Def.'s Resp. 2 (quoting the Zuba Declaration for this proposition).

The court concludes that, with respect to plaintiff's requests for withheld documents relevant to the process of approving the 2002 reward agreement (Document Nos. 24a-b, 26a-b, 27a-c, 29-32, 33a, 33c-e, 34-35) and plaintiff's request for a withheld document relevant to subsequent amendment (Document No. 43), plaintiff has not shown compelling need sufficient to overcome the protection of the deliberative process privilege.  The court agrees with defendant that such disclosures could create some confusion about IRS policy with respect to reward agreements.  Further, the court does not discern from plaintiff's briefing how comparing the IRS processes for approval and execution of the 2002 reward agreement with IRS process for approval and execution of a subsequent amendment would be relevant to plaintiff's case.  Plaintiff has not alleged any facts that would tend to show that the two processes should be the same or that they should involve similar documentation.  Instead, plaintiff appears to suggest that a lack of documents produced in relation to any amendment at issue in this case is relevant to whether the government acted in bad faith in proposing or executing such an amendment--on the basis that the government's amendment process deviates from the process followed with respect to approval and execution of the 2002 amendment.  Plaintiff has failed to persuade the court that this constitutes a compelling need for production of the withheld documents that are related to IRS approval and execution of the 2002 reward agreement and the withheld draft of a subsequent amendment agreement that was never executed.

The court concludes that the withheld documents requested by plaintiff that are related to undercover operations targeting taxpayers based on information provided by plaintiff (Document Nos. 42, 44-45) are directly relevant to this case.  Plaintiff's argument comes down to the assertion that plaintiff is not getting the benefit of the bargain contained in the reward agreement after having rendered performance. Documents related to investigations stemming from information provided by plaintiff are directly relevant to whether plaintiff has performed in such a way that would entitle plaintiff to payment under the reward agreement.  To the extent that the court has determined that such documents are within the scope of the deliberative process privilege, plaintiff has demonstrated compelling need sufficient to overcome the privilege.  The disclosure to plaintiff of such documents under the Protective Order in this case is unlikely to result in any public confusion or otherwise lead to challenges by taxpayers of IRS policies--both because the documents will not be publically disclosed and because the documents are so specific to plaintiff's case.  And defendant has alleged no specific harm that would flow from disclosure of these particular documents.

Although defendant's assertion of the deliberative process privilege was procedurally deficient, the court exercises its discretion and DENIES plaintiff's Motion with respect to Document Nos. 24a-b, 26a-b, 27a-c, 29-32, 33a, 33c-e, 34-35 and 43, which it determines are of the type that the deliberative process privilege protects, and as to which it determines that plaintiff has not shown a compelling need that would outweigh the potential harm to the government of disclosure.

The court concludes that Document No. 37 is not within the scope of the deliberative process privilege and GRANTS plaintiff's Motion with respect to Document No. 37 to the extent further provided herein.  See infra Part IV.  With respect to Document Nos. 42 and 44-45, plaintiff's motion is GRANTED, except to the extent that such documents contain confidential personal information (such as addresses or social security numbers) of third parties, based on the court's conclusions that portions of these documents are not within the scope of the deliberative process privilege, and that plaintiff has shown compelling need that outweighs the harm to the government in disclosure of the remaining portions.

4.     Documents Withheld Pursuant to 26 U.S.C. § 6103

Document Nos. 47 and 53 are identified in the privilege log as protected pursuant to 26 U.S.C. § 6103(h).  See Pl.'s Mem. Ex. E (privilege log) 7-8.  Plaintiff has stated that Document No. 53 is not at issue, which the court understands to mean that plaintiff does not seek production of it.  Pl.'s Reply 1 n.1.  Therefore, the court only considers whether Document No. 47 was properly withheld.

Generally, federal tax returns and return information are confidential.  26 U.S.C. § 6103(a).  A return or return information may be disclosed in a federal judicial or

administrative proceeding pertaining to tax administration only in certain situations, such as when the taxpayer is a party to the proceeding and when the treatment of an item on a return is "directly related to the resolution of an issue in the proceeding." Id. § 6103(h)(4).

Document No. 47 is identified on the privilege log as an undated "Staff Summary Sheet." Pl.'s Mem. Ex. E (privilege log) 7. The court's inspection of the document shows it to be a blank form. Because the form contains no information, it does not fall within the scope of the protection for confidential information. However, because the form contains no information, the court can discern no relevance of the form to plaintiff's claims. The court declines to exercise its discretion to compel production of Document No. 47, and with respect to Document No. 47, plaintiff's Motion is DENIED.

B.      Documents Responsive to Plaintiff's First and Second Production Requests

Plaintiff asserts that defendant failed to produce documents responsive to plaintiff's first and second production requests, and that these withheld documents were not identified in the privilege log. See Pl.'s Mot. 2-3 (discussing "additional documents" "[a]bove and beyond the documents identified on Defendant's Privilege Log" to which defendant objected on the basis of privilege). Defendant appears to construe this category of documents narrowly because it addresses only those documents that plaintiff alleges were produced in an incomplete form. See Def.'s Resp. 2-3, 7-8 (discussing incomplete documents). However, the court understands plaintiff's Motion to include documents that were not produced in any form and, in particular, "documentation focused on referenced items in certain reports of Special Agents claim[ing] to have pursued undercover operations in the investigation of [***]," which plaintiff requested in its second production request. See Pl.'s Mem. 12 (describing documents requested in plaintiff's second production request); see also id. at Ex. C (Pl.'s 2d Set of Reqs. for Produc.) 3-5.

Plaintiff states that in response to its second request for production, "Defendant served objections to many of the requests, by asserting privileges to a number of the requests." Pl.'s Mem. 12. Indeed, defendant's Production Responses II objected to all five items requested by plaintiff on the grounds that each item "call[ed] for material subject to the attorney-client privilege, work product privilege, the deliberative process privilege, and the investigative files privilege." Pl.'s Mot. Ex. D. (Def.'s Produc. Resps. II) 2-5. Nonetheless, the privilege log produced by defendant--which is dated July 16, 2012--does not appear to include any of the any materials responsive to the items requested in plaintiff's second production request, as to which defendant objected on the grounds of privilege--nor could it have when defendant's preliminary assertions of privilege with respect to such materials were made on September 10, 2012, nearly two months after the privilege log was created. Compare Pl.'s Mem. Ex. E (privilege log) 1, with id. at Ex. D (Def.'s Produc. Resps. II) 6.

25

As discussed above in Part III.A.3.b, plaintiff has a compelling need for production relevant to whether, under the reward agreement, plaintiff's performance (that is, by providing information) entitled plaintiff to performance that has not been rendered by the IRS.  Of particular relevance to this issue is whether the information provided by plaintiff led to recovery of taxpayer dollars by the IRS, a matter which documentation of undercover activities targeted at the taxpayers identified by plaintiff would tend to show.  With respect to any such items requested by plaintiff in its second production request that were withheld on the basis of privilege but not described in the privilege log, plaintiff's Motion is GRANTED.  Defendant SHALL IMMEDIATELY PRODUCE such documents to plaintiff, at or before 5:00 p.m. EST on Wednesday, December 19, 2012.  To the extent that defendant continues to withhold any such documents on the basis of privilege, defendant shall include in its notice to the court to be filed on or before Wednesday, December 19, 2012 a log identifying documents so withheld--including any privilege(s) claimed and information sufficient to meet the requirements of any such privilege(s) asserted--and two full sets of paper copies of such withheld documents to the court, as further provided herein.  See infra Part IV.

With respect to the incomplete documents, plaintiff has identified portions of four documents, which it alleges were improperly withheld.  First, plaintiff points to an e-mail chain, the printout of which indicates that the page produced by defendant is page one of two; however, page two was allegedly not produced.  Pl.'s Mem. 13; see id. at Ex. G (containing page one of the e-mail chain at issue).  Second, plaintiff states that another e-mail chain references an attachment that is allegedly missing.  Pl.'s Mem. 13; see id. at Ex. H (containing the e-mail chain).  However, it appears to the court that the document included by plaintiff in Exhibit H immediately before the e-mail chain is most likely the formal request referenced as the attachment.  See Pl.'s Mem. Ex. H (containing a memorandum and an e-mail chain)1-2.  Third, plaintiff appears to make a similar allegation that an attachment referenced in another e-mail chain is missing.  See Pl.'s Mem. 13-14.  However, Exhibit I to plaintiff's Memorandum, which plaintiff describes as the "communications that reference an attachment," id. at 13, is a memorandum that does not reference any such attachment, id. at Ex. I (containing communications).  Finally, plaintiff alleges that "a memorandum to deactivate" referenced in another e-mail chain was not produced or identified in defendant's privilege log.  Pl.'s Mem. 14; see id. at Ex. J (containing e-mail chain).

In response to plaintiff's allegations concerning "missing pages or attachments," defendant states that "the court should not compel the production of miscellaneous incomplete documents."  Def.'s Resp. 7 (capitalization and emphasis omitted).  Defendant argues that "[t]he incomplete nature of the few documents referenced by plaintiff is not a case where the Government has purposely withheld any documents, but it is merely the normal happenstance of imperfect filing and preservation of documents prior to the commencement of litigation."  Def.'s Resp. 8.  Defendant further states that "[i]n every instance in this litigation in which plaintiff has made us aware of a missing

document or portion of the document, we have ensured that we have provided all the documents that we possess." Id. at 7-8.

The court agrees with defendant that the court should not compel production of the second and third incomplete documents identified by plaintiff for the aforementioned reasons. With respect to the first document, regardless of whether the missing page was inadvertently omitted, plaintiff's Motion is GRANTED. Defendant SHALL PRODUCE the missing page to the e-mail chain contained in Exhibit G to plaintiff on or before 5:00 p.m. EST on Wednesday, December 19, 2012, unless it has done so already. If this page was lost through imperfect filing and preservation and cannot be produced, defendant SHALL include in its notice to be filed with the court on or before Wednesday, December 19, 2012 an explanation as to why the page cannot be produced, including a statement of defendant's efforts to locate and produce the missing page. With respect to the fourth document identified by plaintiff, plaintiff's Motion is also GRANTED. Defendant SHALL PRODUCE the deactivation memorandum referenced in the e-mail chain in Exhibit J to plaintiff on or before 5:00 p.m. EST on Wednesday, December 19, 2012, unless it has done so already. To the extent that defendant continues to withhold any of these documents on the basis of privilege, defendant shall identify such document(s) in the privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012--including any privilege(s) claimed and information sufficient to meet the requirements of any such privileges asserted--and shall provide two full sets of paper copies of such documents to the court, as further provided herein. See infra Part IV.

C.    Redacted Documents

Plaintiff states that it "has requested that Defendant provide further explanation as to the reasons for significant redactions of documents, not otherwise identified on Defendant's Privilege Log." Pl.'s Mem. 14. Defendant responds that, "with one exception, we understood that the documents were clear on their face regarding the nature of the communications redacted." Def.'s Resp. 5. Plaintiff replies that this response is inappropriate "because it simply leaves Pat Doe in the dark as to critical documentation and communications that are inexplicably unaccounted for." Pl.'s Reply 12.

Based on the redacted documents provided to the court by defendant, it appears that defendant has identified ten redacted documents as being at issue. Plaintiff identifies in its Memorandum four specific documents, which it describes as "redacted documents produced but not listed and described on the government's privilege log." See Pl.'s Mem. 14-16 (capitalization and emphasis omitted). However, only two of the four documents identified by plaintiff are included in the ten documents produced to the court by defendant. The court considers all twelve documents in its analysis.

According to defendant, the one exception where the reason for redaction was not clear on the face of the document was a 2006 e-mail chain forwarded by IRS special agent [\*\*\*] to Agent Tyska (located at Bates numbers CI59-US-004921 through CI59-US-004923).  Def.'s Resp. 5.  The entire document has been redacted, except for a request that Agent Tyska "'take (the) necessary action to resolve this matter ASAP.'" Pl.'s Mem. 15 (quoting an e-mail in the chain).  With respect to this document, counsel for defendant states that he explained to plaintiff by e-mail, in response to plaintiff's inquiry, that the document was redacted because it contained advice from an IRS attorney and discussions of that advice within the IRS, and thus was protected by attorney-client privilege.  See Def.'s Resp. 5; id. at Ex. 2 (e-mail from Reid Prouty to Scott Tufts discussing such redaction).  That e-mail also contains an apology that this document was omitted from the privilege log.  See Def.'s Resp. Ex. 2 (e-mail from Reid Prouty to Scott Tufts).  The court agrees with defendant that the e-mail contained in Exhibit 2 to defendant's Response sufficiently describes why this document was withheld to allow plaintiff to assess the claim that the redacted portion of the document falls within the scope of the attorney-client privilege.

To the extent that plaintiff alleges that this document should be produced because it falls within the crime-fraud exception to attorney-client privilege, the court exercises its discretion to conduct in camera review of the document.  Such review is appropriate when the court believes that a showing has been made "of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Zolin, 491 U.S. at 572 (internal quotation marks and internal citation omitted).  The crime-fraud exception is applicable when the party challenging the assertion of attorney-client privilege makes a prima facie showing that the communication at issue was made in furtherance of a crime or fraud or other fundamental misconduct.  See In re United States, 321 F. App'x at 956 (stating that, in certain situations, the crime-fraud exception is broad enough to encompass documents that are "incident" to alleged "fundamental misconduct" and finding that the exception applied to documents that themselves constituted a breach of a contract term prohibiting ex parte communications); cf. Spalding Sports, 203 F.3d at 807 (describing the crime-fraud exception as applying only in the context of crime or fraud, without reference to "fundamental misconduct").

Here, plaintiff has alleged that the government, through the actions of Agent Tyska, breached the reward agreement and acted in bad faith.  See supra Part I (describing background facts).  Plaintiff also alleges that the government has failed to produce a number of documents relevant to whether the government acted in bad faith, including documents relevant to whether plaintiff is entitled to payment under the reward agreement.  See supra Parts III.A.3.b, III.B.  Further, the government has failed to properly assert a number of privilege claims in this case.  See supra Parts III.A-B.  The court concludes that a reasonable person could conclude from the facts alleged by plaintiff that an in camera review of this document may reveal fundamental misconduct--

particularly when defendant has not alleged that plaintiff's performance under the reward agreement was deficient and when the only part of the document available to plaintiff instructs the person whom plaintiff has accused of acting in bad faith to "'take (the) necessary action to resolve this matter ASAP.'" See Pl.'s Mem. 15 (quoting the document).

Nonetheless, the court cannot conclude from in camera review of this document that it was created in furtherance of fundamental misconduct. Cf. In re United States, 321 F. App'x at 956. The court finds that this document is not within the scope of the crime-fraud exception and, therefore, that it is protected by the attorney-client privilege.

The court now turns to the other nine redacted documents produced to the court by defendant. Four of the documents are draft agreements containing handwritten notes. The first is titled "Model Informant Reward Agreement" (located at Bates numbers CI59-US-004408 through CI59-US-004411), and the other three are each titled "Confidential Informant Reward Agreement" (located at Bates numbers CI59-US-004752 through CI59-US-004760, CI59-US-004761 through CI59-US-004769, and CI59-US-005093 through CI59-US-005101, respectively). The court agrees with defendant that it is apparent on the face of each of these four documents that handwritten notes have been redacted. However, defendant has not explained why such notes would be privileged nor invoked any particular privilege in relation to these redactions. Cf. RCFC 26(b)(5)(A) (requiring that a party claiming a privilege must expressly claim the privilege and describe the nature of the withheld materials in such a way as to allow the other party to assess the claim). Defendant SHALL include in the privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012 a listing for each of these four redacted documents--including any privilege(s) claimed and information sufficient to meet the requirements of any such privilege(s) asserted--and a description of the material redacted sufficient for plaintiff to assess whether such material was properly withheld.

Defendant has also produced to the court a redacted memorandum to [***] from [***], dated February 21, 2002, with the subject "Informant Agreement" (located at Bates number CI59-US-004590). This document appears to be identical to Document No. 37 on the privilege log, which the court has concluded is not protected by the deliberative process privilege. See supra Part III.A.3.a. The document has been redacted with respect to four sentences to protect information about prior reviews and negotiations related to the reward agreement, information which states the fact of such prior reviews and negotiations without disclosing their content, except to say that eight objections were raised to the original draft agreement. Unless defendant claims a privilege other than deliberative process privilege with respect to the redacted portion of this document, plaintiff's Motion is GRANTED with respect to Document No. 37, and defendant shall produce Document No. 37 to plaintiff in its entirety. See Part III.A.3 (concluding that Document No. 37 is not protected by deliberative process privilege). If defendant claims

another privilege other than deliberative process privilege with respect to the redacted portion of this document, defendant SHALL include this redaction in the privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012--identifying such privilege(s) and including information sufficient to meet the requirements of any such privilege(s) asserted--and a description of the material redacted sufficient for plaintiff to assess whether such material was properly withheld.

The remaining four redacted documents produced by defendant to the court consist of one memorandum and three e-mail chains.  The memorandum, from [***] to [***], dated July 5, 2005, is titled "Request for Extension of Time to Evaluate Referral[]" (located at Bates numbers CI59-US-005051 through CI59-US-005052).  Although it has a different author, the content of this document is substantially similar to that of Document No. 42 listed on the privilege log, a memorandum from [***] to [***], as to which the court found some portions were not protected by the deliberative process privilege and that plaintiff had shown a compelling need sufficient to overcome the government's assertion of the privilege with respect to the other portions.  See Part III.A.3.  This document has been redacted to protect confidential personal information about a third party (i.e., social security number and address) and to protect one sentence describing review of a revised version of a new informant agreement, which appears never to have been signed.  The first e-mail chain (located at Bates numbers CI59-US-004603 through CI59-US-004604), from February 2002, has been redacted to protect discussions about who would be the IRS contact on the reward agreement and logistical information about mailing the agreement for signatures.  The second e-mail chain (located at Bates number CI59-US-004640), from December 2005, has been redacted to protect an e-mail from [***], which references various attachments related to approval of a proposed amendment to the reward agreement.  The third e-mail chain (located at Bates numbers CI59-US-004917 through CI59-US-004918), from February 2006, has been redacted to protect a portion of a summary from [***] related to an amendment to the reward agreement.

Except with respect to the confidential personal information about a third party (contained in the memorandum titled "Request for Extension of Time to Evaluate Referral"), the court does not agree with defendant that the reasons for redaction of any of these four documents are clear on the faces of the documents.  Therefore, defendant SHALL also include in the privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012 a listing of these redactions--including any privilege(s) claimed and information sufficient to meet the requirements of any such privilege(s) asserted--and a description of the material redacted sufficient for plaintiff to assess whether such material was properly withheld.

Finally, plaintiff has identified two additional documents--not produced by defendant in the redacted documents produced to the court--which plaintiff claims were improperly redacted.  Plaintiff has not provided copies of these documents to the court as

exhibits to plaintiff's Memorandum.  The first of these documents is described by plaintiff as "redacted discussions between [***] [and] plaintiff's counsel."  Pl.'s Mem. 15 (capitalization and emphasis omitted).  Plaintiff identifies the redacted portion of this document as being located at Bates number CI59-US-004223 and states that the document contains e-mail communications that took place on or around May 23, 2005 related to obtaining comments from plaintiff's counsel on a draft modification to the reward agreement.  Id.  The court fails to discern why defendant would redact a document to which plaintiff's counsel had already been privy or why plaintiff would need to have produced an e-mail that was already directed at and sent to plaintiff's counsel.  It appears to the court that plaintiff would already have access to the information contained in such an e-mail.  Absent an explanation as to why the document is not otherwise available to plaintiff, the court declines to exercise its discretion to compel production of the document.  Plaintiff's Motion with respect to this document is therefore DENIED.

        The second document identified by plaintiff is described as "redacted communications between [Agent] Tyska and [***]."  Id. at 16 (capitalization and emphasis omitted).  These communications appear to include a memorandum from Agent Tyska to [***], which, according to plaintiff, references at Bates number CI59-US-005566 an attachment that was not produced.  Id.  Plaintiff also appears to allege that IRS Form 13316 should have produced in conjunction with these communications.  Id.  The court cannot discern from plaintiff's description whether any portion of these communications were redacted, or whether plaintiff is arguing only that missing attachments were not produced.  To the extent that portions of these communications were redacted, defendant shall list the redacted portions on its privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012--identifying any privilege(s) claimed and including information sufficient to meet the requirements of any such privilege(s) asserted--and shall provide the court with two full sets of paper copies of the communications (with each set containing a copy of the complete document and a copy of the document as redacted), as further provided herein.  See infra Part IV.  To the extent that referenced attachments have not been produced, defendant SHALL PRODUCE such attachments to plaintiff at or before 5:00 p.m. EST on Wednesday, December 19, 2012.  If any such attachments were withheld on the basis of privilege but not described in the privilege log, defendant shall list these documents in the privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012--identifying any privilege(s) claimed and including sufficient information to meet the requirements of any such privilege(s) asserted--and shall provide the court with two full sets of paper copies of such documents, as further provided herein.  See infra Part IV.

IV.    Conclusion

        The court finds that defendant's privilege log does not suffice as a proper assertion of either attorney-client privilege or work-product protection.  See supra Part III.A.1-2. Accordingly, defendant SHALL FILE a notice with the court at or before 5:00 p.m. EST

on Wednesday, December 19, 2012 that provides information sufficient for plaintiff to assess whether the documents withheld under attorney-client privilege and work-product doctrine were within the scope of the asserted protections.

Further, the court finds that defendant has not properly explained its redactions in the ten redacted documents produced to the court, except with regard to the email from IRS special agent [***] to Agent Tyska.  See supra Part III.C.  Accordingly, defendant SHALL FILE with its notice, at or before 5:00 p.m. EST on Wednesday, December 19, 2012, a privilege log identifying these nine additional redacted documents--and other documents as provided below--and asserting any privilege(s) claimed with respect to such documents.  Defendant SHALL include in its notice information sufficient to meet the requirements of any such privilege(s) asserted--and a description of the material redacted sufficient for plaintiff to assess whether such material was within the scope of the asserted privileges.  Cf. RCFC 26(b)(5)(A).

With respect to the documents withheld by defendant under the deliberative process privilege, the court finds that defendant's assertion of the deliberative process privilege was procedurally deficient.  See supra Part III.A.3.  Nonetheless, the court exercises its discretion and DENIES plaintiff's Motion with respect to Document Nos. 24a-b, 26a-b, 27a-c, 29-32, 33a, 33c-e, 34-35 and 43, which the court determines on review are of the type that the deliberative process privilege protects, and, as to which, the court determines that plaintiff has not shown a compelling need that would outweigh the potential harm to the government of disclosure.  See supra Part III.A.3.

However, with respect to Document Nos. 42 and 44-45, plaintiff's Motion is GRANTED, except to the extent that such documents contain confidential personal information (such as addresses or social security numbers) of third parties.  The court concludes that portions of these documents are not within the scope of the deliberative process privilege, and that, with respect to the remaining portions, plaintiff has shown compelling need that outweighs the harm to the government in disclosure.  See supra Part III.A.3.  Accordingly, defendant SHALL PRODUCE Documents No. 42 and 44-45 to plaintiff at or before 5:00 p.m. EST on Wednesday, December 19, 2012, with the confidential personal information redacted.

The court has found that Document No. 37 is not within the scope of the deliberative process privilege.  See supra Part III.A.3.a.  However, the same document appears to have been produced by defendant in redacted form (located at Bates number CI59-US-004590).  If defendant claims a privilege other than the deliberative process privilege with respect to the redacted portion of this document, defendant SHALL identify such assertion of privilege(s) in the privilege log to be filed by defendant with its notice to the court on or before Wednesday, December 19, 2012, as described above with respect to other redacted documents.  If defendant claims only the deliberative process privilege with respect to Document No. 37, plaintiff's Motion with respect to this

document is GRANTED, and defendant SHALL PRODUCE Document No. 37, in its entirety, to plaintiff at or before 5:00 p.m. EST on Wednesday, December 19, 2012.

With respect to the document listed by defendant as protected pursuant to 26 U.S.C. § 6103, Document No. 47, plaintiff's Motion is DENIED because the document appears to be irrelevant to plaintiff's case.

With respect to those documents responsive to plaintiff's second production request but not produced, the court finds that plaintiff has a compelling need for production of such documents related to investigation by the IRS--based on information provided by plaintiff--of taxpayer activities.  See supra Part III.B.  With respect to such documents, plaintiff's Motion is GRANTED.  With respect to certain incomplete documents identified by plaintiff, specifically the missing page to the e-mail chain contained in Exhibit G to plaintiff's Memorandum and the deactivation memorandum referenced in the e-mail chain in Exhibit J to plaintiff's Memorandum, plaintiff's Motion is also GRANTED.  Defendant SHALL IMMEDIATELY PRODUCE all such documents to plaintiff, at or before 5:00 p.m. on Wednesday, December 19, 2012.

To the extent that defendant claims any privilege(s) with respect to any such documents described in the preceding paragraph, defendant SHALL include in its privilege log to be filed with its notice to the court at or before 5:00 p.m. EST on Wednesday, December 19, 2012 a list of such documents, identifying the privilege(s) asserted with respect to each such document and SHALL include in its notice a sufficient description of each such document to allow plaintiff to assess the privilege(s) claimed and sufficient information to meet any other requirements of such privilege(s) asserted. Defendant SHALL DELIVER to the Clerk of the Court at or before 5:00 p.m. EST on Wednesday, December 19, 2012, two full sets of paper copies of any such documents withheld as privileged, along with two sets of paper copies of the privilege log identifying the privileges(s) asserted with respect to each such document for inspection by the court, should the court conclude that in camera review of such documents is necessary.

 With respect to the document described by plaintiff as redacted communications between Agent Tyska and [***] (which allegedly references attachments at Bates number CI59-US-005566 that were not produced), see supra Part III.C, to the extent that the communications contain redactions, defendant SHALL identify such redactions in the privilege log to be filed with its notice to the court on or before Wednesday, December 19, 2012--identifying any privilege(s) claimed--and SHALL include in its notice information sufficient to meet the requirements of any such privilege(s) asserted and a description of the material redacted sufficient for plaintiff to determine whether such material was properly withheld.  Defendant SHALL also DELIVER to the Clerk of the Court at or before 5:00 p.m. EST on Wednesday, December 19, 2012, two full sets of paper copies of any such redacted communications (with each set containing a copy of

the complete document and a copy of the document as redacted), along with two full sets of paper copies of the privilege log identifying the privileges(s) asserted with respect to each such document for inspection by the court, should the court conclude that in camera review of such documents is necessary.  Defendant SHALL also PRODUCE such referenced attachment(s) to plaintiff at or before 5:00 p.m. EST on Wednesday, December 19, 2012, unless it has done so already.  To the extent that defendant continues to withhold such attachment(s) on the basis of privilege, they too SHALL be included in that privilege log to be filed by defendant with its notice to the court on or before Wednesday, December 19, 2012, and defendant SHALL DELIVER to the Clerk of the Court at or before 5:00 p.m. EST on Wednesday, December 19, 2012, two full sets of paper copies of any such documents withheld for inspection by the court, should the court conclude that in camera review of such documents is necessary.

With respect to the remaining incomplete documents identified by plaintiff in its Memorandum (contained in Exhibits H and I to plaintiff's Memorandum) and one of the two documents identified in plaintiff's Memorandum as redacted but not produced by defendant to the court (identified by plaintiff as redacted discussions between [***] and plaintiff's counsel, located at Bates number CI59-US-004223), plaintiff's Motion is DENIED for the reasons stated above.  See supra Parts III.B-C.

Should plaintiff, upon reviewing the notice and privilege log to be filed by defendant on Wednesday, December 19, 2012, determine that any materials described therein were not properly withheld as privileged, plaintiff may file a second motion to compel at or before 5:00 p.m. EST on Wednesday, January 9, 2013.

For the foregoing reasons, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART.  Pursuant to RCFC 37(a), when a motion to compel production is granted-in-part and denied-in-part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  RCFC 37(a)(5)(C).  Plaintiff may file a motion requesting such an apportionment at or before 5:00 p.m. EST on Wednesday, January 9, 2013.

The parties SHALL submit at or before 5:00 p.m. on Friday, December 14, 2012 their proposals for any redactions deemed necessary prior to publication of this opinion.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge