# In the United States Court of Federal Claims

No. 11-153C

(Filed Under Seal: April 13, 2015 | Reissued: April 22, 2015)*

| | |
|---|---|
| CONFIDENTIAL INFORMANT 59-05071, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Discovery; Attorney-Client Privilege; Crime-Fraud Exception; Request for Production; RCFC 26(b)(1); Sanctions; RCFC 37(a)(5). |

*Thomas Scott Tufts*, Tufts Law Firm, PLLC, Maitland, FL, for plaintiff

*Jonathan Reid Prouty*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant.  With him on the briefs were *Jessica R. Toplin*, Trial Attorney, *Patricia M. McCarthy*, Assistant Director, *Bryant G. Snee*, Acting Director, and *Stuart F. Delery*, Assistant Attorney General

## OPINION AND ORDER

**KAPLAN, Judge.**

Currently before the Court is plaintiff's motion to compel discovery and for sanctions pursuant to Rules of the Court of Federal Claims ("RCFC") 37(a)(5).  In its[1] motion, the plaintiff in this case, Confidential Informant 59-05071,  challenges the assertion of the attorney-client privilege by the United States ("the government" or "defendant") in response to plaintiff's requests for production of certain documents.  In addition, plaintiff seeks to compel the production of additional documents that plaintiff alleges are discoverable under RCFC 26(b)(1).  Plaintiff also seeks an award of the costs of the depositions it conducted of certain current and

---

* This Opinion was originally issued under seal, and the parties were given the opportunity to request redactions.  In light of the plaintiff's suggested redactions, filed on April 20, 2015, the Opinion is now reissued with redactions indicated by brackets.

[1] In the interest of protecting plaintiff's identity, the Court will refer to the plaintiff throughout this opinion by use of the pronoun "it."

former government employees, arguing that it will need to re-depose those individuals in light of the government's delayed production of documents following the court's December 11, 2012 order granting in part and denying in part plaintiff's first motion to compel. Plaintiff also seeks an award of attorney fees. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's current motion to compel and **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion for sanctions.

## BACKGROUND

### I. Plaintiff's Claims

The background of this case is discussed in the earlier decisions and orders of the Court. See Confidential Informant 59-05071 v. United States, No. 11-153C, at 2-4 (Fed. Cl. Nov. 22, 2011) (filed under seal), ECF No. 16 [hereinafter "Opinion on MTD"]; Confidential Informant 59-05071 v. United States, 108 Fed. Cl. 121, 128-29 (2012). To briefly summarize, in plaintiff's Second Amended Complaint (filed by leave of court on April 22, 2013), plaintiff alleges that in February 2002, it entered into a written Reward Agreement with the Internal Revenue Service (IRS) in which plaintiff agreed to provide information regarding the underpayment of taxes by certain third-party taxpayers for tax years [. . .] through [. . .]. Mot. to File Second Am. Compl. Ex. 1 ¶¶ 5-7, April 9, 2013, ECF No. 76 [hereinafter "Second Am. Compl"]; see generally Second Am. Compl. Ex. A [hereinafter "Reward Agreement" or "agreement"]. Under the agreement, the IRS committed to protect against disclosure of plaintiff's identity, Reward Agreement ¶ 5, and—subject to certain conditions—pay plaintiff a percentage of any taxes collected as a result of the information plaintiff supplied. Id. ¶¶ 6-8. Consistent with the agreement, on March 28, 2002 and then again in early 2005, plaintiff provided the IRS with information about alleged underreporting of federal tax liabilities [. . .] and a [. . .], which plaintiff alleged totaled more than $100,000,000. Second Am. Compl. ¶¶ 8, 12.

The Reward Agreement was modified by the mutual consent of the parties sometime in the spring of 2005. Second Am. Compl. ¶¶ 14-18; see also Second Am. Compl. Ex. B. The amendment extended by five years the time period for which plaintiff would offer information to the IRS; added a provision stating that plaintiff would wear a body wire if the need arose; and replaced the IRS official designated to receive information from plaintiff with Special Agents Casimir P. Tyska and Crystal Ashley. Second Am. Compl. Ex. B at 1.[2]

On or about May 3, 2005, the IRS requested that plaintiff and plaintiff's counsel meet with the criminal investigation division of the IRS and provide proof of plaintiff's identity. Second Am. Compl. ¶ 19. A week later, plaintiff provided the IRS with "new information concerning an additional [. . .] in the United States engaging in [. . .] cash skimming." Id. ¶ 21.

---

[2] Although it is unclear whether any IRS official ever actually signed the proposed amendment, the government has acknowledged that its terms were agreed to by both parties. Def.'s Resp. to Pl.'s Mot. Compel 3 (citing Def.'s App. 50), March 10, 2014, ECF No. 99. [hereinafter "Def.'s Resp."].

Plaintiff contends that on or between May 3, 2005 and December 31, 2005, it had "multiple" telephone conversations with Agent Tyska, as well as one or two in-person meetings, without its counsel present.  Id. ¶ 22.  Plaintiff claims that on these occasions "Agent Tyska made repeated statements and representations aimed at swaying, influencing, and manipulating [plaintiff]."  Id. ¶ 23.  Specifically, plaintiff claims that Agent Tyska (allegedly at the direction of his superiors at the IRS) told plaintiff:  (1) that plaintiff's counsel was incompetent and that the protections contained in the Reward Agreement counsel negotiated were similar to those already required by the IRS rules and regulations; (2) that the Reward Agreement tied Agent Tyska's hands; (3) that plaintiff should sign an IRS Form 211 (Application for Award for Original Information); (4) that plaintiff should execute a new amendment to the Reward Agreement; (5) that special agents were investigating the taxpayers plaintiff had identified; and (6) "that Special Agent Tyska could not proceed unless an Amendment is executed."  Id. ¶ 25.  Plaintiff further alleges "[o]n information and belie[f]" that "the directions given by at least one higher ranking individual with the IRS were that Special Agent Tyska was to do nothing proactive, that the reward agreement, as amended, was 'null and void,' and that he was to get [plaintiff] to act within the constraints of a Form 211."  Id. ¶ 24.

The purpose of a Form 211 (the document plaintiff alleges that Agent Tyska demanded that plaintiff execute) is to request a monetary reward from the IRS under 26 U.S.C. § 7623 (2006).  See Capelouto v. United States, 99 Fed. Cl. 682, 690 (2011).  The current version of section 7623 provides, in relevant part, that if an individual provides information to the IRS that results in the detection of a tax underpayment or the prosecution of a tax law violation, that person "shall . . . receive as an award at least 15 percent but not more than 30 percent of the collected proceeds . . . resulting from the action . . . or from any settlement in response to such action."  26 U.S.C. § 7623(b)(1).  At the time that plaintiff provided information to the IRS, however, the provision of an award under section 7623 was entirely discretionary. See Colman v. United States, 96 Fed. Cl. 633, 638-39 (2011). [3]

According to plaintiff, in a November 28, 2005 email to Agent Tyska, plaintiff stated that it did not wish to sign and submit a Standard Form 211 in lieu of the existing Reward Agreement.  Id. ¶ 43.  Plaintiff further claims that in this email plaintiff asked Agent Tyska to

---

[3]  Because the pre-2006 version of the statute made an award payment entirely discretionary, this court had repeatedly held that § 7623 was not a money-mandating statute for purposes of establishing Tucker Act jurisdiction.  Id. at 638 (citing Dacosta v. United States, 82 Fed. Cl. 549, 556 (2008); Conner v. United States, 76 Fed. Cl. 86, 87 (2007); Destefano v. United States, 52 Fed. Cl. 291, 293 (2002); Confidential Informant v. United States, 46 Fed. Cl. 1, 6 (2000)).  In the Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 406, 120 Stat. 2922, 2958-60 (2006), Congress added a new subsection (b) to § 7623, which created a non-discretionary award reviewable in the U.S. Tax Court, but only where the tax, penalties, interest additions, and additional amounts in dispute exceed $2,000,000.  Id. at 2958-59. The new non-discretionary award only applies to information provided to the IRS after the date of enactment of the Act.  Id. at 2960.  Under the new statutory scheme, rewards for amounts in dispute under $2,000,000 are governed by § 7623(a).

clarify why he viewed the information and documents that plaintiff had provided as "too old" to be usable for investigative purposes. Id. ¶ 44.  On January 3, 2006, plaintiff contends, it "sent a letter to Special Agent Tyska indicating that Plaintiff was resisting Defendant's effort to force Plaintiff to renegotiate the previously bargained for benefits set forth in the Reward Agreement, as amended." Id. ¶ 52.  On February 1, 2006, plaintiff alleges that it inquired about whether plaintiff's January 3, 2006 email had been received "and again sought assurances that Defendant was going to pursue the case." Id. ¶ 53.  Further, plaintiff contends that it "again sought assurances from Defendant, by and through Special Agent Tyska, on May 22, 2006, via e-mail and by certified mail, on June 9, 2006," but that "Defendant did not provide any of the requested assurances." Id. ¶ 56, 57.

In December 2010, plaintiff "made a formal demand on . . . Defendant to duly render an accounting with respect to the information and documentation submitted." Id. ¶ 34.  However, defendant, "acting by and through the Whistleblower Office, indicated that it had no record of having ever received the file." Id. ¶ 35.

Plaintiff filed its initial complaint setting forth three causes of action in March 2011. Plaintiff has since twice amended its complaint.  In Count I of plaintiff's second amended complaint (entitled "Anticipatory Repudiation"), plaintiff alleges that after it fully performed its obligations under the Reward Agreement, the IRS repudiated the agreement when, acting through Special Agent Tyska, it attempted to coerce the plaintiff to execute a new agreement and agree to submit a Form 211 by threatening that if plaintiff refused to do so the IRS would "refus[e] to proceed and perform . . . under the Reward Agreement." Second Am. Compl. ¶ 40. Further, plaintiff alleges, the IRS also engaged in anticipatory repudiation when it failed to provide plaintiff with "assurances" that the information it had supplied was not stale and that IRS intended to go ahead with an investigation based on the information. Id. ¶ 57.

Count II is a claim for damages for breach of the duty of good faith and fair dealing. Id. ¶¶ 59-64. Plaintiff alleges that the IRS acted in bad faith by making "repeated statements and representations to induce [the plaintiff] to proceed without counsel and to wrongfully attempt to abrogate the Reward Agreement, after having obtained the Plaintiff's identity." Id. ¶¶ 63. Finally, in Count III, plaintiff seeks an accounting from the government and the payment of moneys potentially due to plaintiff under the agreement. Id. ¶¶ 65-69.

## II.    The Denial of the Government's Motion to Dismiss

The government previously moved to dismiss plaintiff's first complaint for failure to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss, June 8, 2011, ECF No. 7.  It contended that the Reward Agreement did not obligate the IRS to conduct an investigation based on the information plaintiff provided; accordingly, even assuming the truth of plaintiff's allegations that the IRS had threatened not to investigate unless plaintiff agreed to modify the agreement, plaintiff failed to state a claim for anticipatory repudiation. Id. at 6.

The judge previously assigned to this case rejected the government's argument.  While the court agreed that the Reward Agreement did not obligate the government to investigate, it observed that the agreement's "plain language" did require the IRS "to protect plaintiff's identity

from disclosure and to pay plaintiff a percentage of the money recovered from the investigation of the Taxpayers identified by plaintiff." Opinion on MTD at 13 (citations omitted). The court noted that when ruling on a motion to dismiss for failure to state a claim, the court should employ a liberal construction of the complaint. Id. at 5. Applying that standard, the court concluded that plaintiff's complaint, which alleged that Agent Tyska had threatened that "[t]he IRS would refuse to proceed and perform as required under the Reward Agreement could be interpreted as a refusal to perform—that is, to withhold a reward payment to plaintiff." Id. at 15 (citations omitted).

The court also rejected the government's motion to dismiss Count II of the complaint, alleging a violation of the duty of good faith and fair dealing. It concluded that plaintiff's allegation—that Agent Tyska sought to "force a renegotiation" of plaintiff's bargained for benefits after plaintiff had fully performed under the Reward Agreement by threatening that the IRS would not provide any reward payment under the agreement—was sufficient to support a claim for breach of the covenant of good faith and fair dealing. Opinion on MTD at 20-21 (citing McDonald's Corp. v. Barnes., No. 92-36552, 1993 WL 358556, at *4 (9th Cir. Sept. 14, 1993)).

The Court declined to address Count III of plaintiff's claims, only noting that "[t]he Reward Agreement contemplates the possibility that plaintiff may, in appropriate circumstances, seek an accounting." Id. at 22.

## III.    Prior Discovery Disputes

The motion to compel that is currently before the court is the second one plaintiff has filed in this case. In its first motion to compel, filed on October 25, 2012, plaintiff sought, among other things, the production of documents which the government had withheld on the basis of a variety of privileges. The court partially granted and partially denied plaintiff's motion to compel as reflected in its decision of December 11, 2012. See generally 108 Fed. Cl. 121. It concluded that certain portions of the government's privilege log were inadequate; that the government had wrongfully invoked the deliberative process privilege for some of the documents; that section 6103 of the Internal Revenue Code did not preclude IRS from providing the plaintiff with information about a 2007 undercover operation that had been undertaken based on plaintiff's disclosures; and that the government should search for certain additional documents that the plaintiff had requested. Id. In addition, citing RCFC 37(a)(5)(C), which allows the court to apportion the reasonable expenses for a motion to compel that is granted in part and denied in part, the court gave the plaintiff until January 9, 2013 to request such apportionment. See id. at 150.

After the court issued its opinion on plaintiff's motion to compel, the government informed the court that it possessed additional documents within the scope of the court's order that it had previously asserted were not available. Def.'s Status Report 1, 4-6, Dec. 19, 2012, ECF No. 62. In particular, the government advised the court that when it initially responded to plaintiff's document requests, it had not conducted any searches of the computers of former employees because counsel had understood that the IRS routinely deleted any electronically stored information ("ESI") from former employees' computers upon their departure from the

IRS. Id. at 1, 5. The government also revealed that it had in its possession audio recordings of certain undercover operations that were within the scope of the plaintiff's original request that it had not timely produced. Id. at 4.

In an order issued on January 7, 2013, the court directed the government to obtain and review these records for production to plaintiff's counsel. Order at 1, ECF No. 68. In addition, the court ordered the defendant to produce to plaintiff's counsel, "from time to time as they become available, . . . records responsive to plaintiff's production requests that it obtains and reviews." Id. The court further suspended all previous deadlines in the case, including the deadline for plaintiff to submit its request for apportionment of reasonable expenses incurred in connection with its motion to compel. Id.

From March to September 2013, the government produced ESI generated by the IRS discovery office. See Def.'s Status Reports, March 21, 2013, ECF No. 71; June 7, 2013, ECF No. 84; July 16, 2013, ECF No. 86; Sept. 5, 2013, ECF No. 88. According to the government, it directed the e-discovery office to perform searches of the electronically stored information of former employees that was in the possession of the IRS as well as electronically stored information of current employees whose computers it had previously directed the e-discovery office to search. Def.'s Status Report 1, March 21, 2013, ECF No. 71. Using search terms that it had supplied to plaintiff's counsel, see Def.'s App. 110, the government searched records of custodians that plaintiff had identified prior to December 2012 as well as additional custodians and places that plaintiff subsequently identified. Def.'s Status Report, Sept. 5, 2013; Def.'s App. 109.

In addition, during the period between December 2012 and July 2013, the government provided revised privilege logs to plaintiff. It also produced transcripts of audio recordings related to the 2007 undercover operation as plaintiff had requested. Def.'s Status Report 3, Feb. 19, 2013, ECF No. 69. Because the recordings were of undercover agents who still used their aliases for other undercover work, id., the government imposed an audible "bleep" over portions of the audio files in which the aliases were stated and then provided the files to plaintiff on March 20, 2013. Def.'s Status Report 2-3, Mar. 21, 2013, ECF No. 71; Def.'s Resp. 10.

In the meantime, while this production of documents was proceeding, the plaintiff continued to express concerns about the government's compliance. On March 27, 2013, the plaintiff filed a "Notice of Filing" in which it alleged that the government had allowed spoliation of evidence by failing to place a litigation hold on potentially relevant documents as early as May of 2005. Pl.'s Objections to Def.'s Mar. 21, 2013 Status Report 3-8, Mar. 27, 2013, ECF No. 74. Plaintiff also objected to, among other things, the pace of the government's production of documents, id. at 1-2, 11-14, and the scope of the search the government was conducting. Id. at 3, 5.

In a May 7, 2013 Order, the court rejected the plaintiff's spoliation argument, noting that the plaintiff "failed to persuade the court that defendant's duty to preserve documents in this case arose prior to December 2010, when plaintiff's counsel sent a letter to the IRS Whistleblower Office." Order at 3, ECF No. 82. It also rejected the plaintiff's other claims that the government's document production efforts were inadequate. Id. at 4. The court observed

that the plaintiff "does not appear to take issue with the key word searches described by defendant's Response [to the Notice of Filing] but instead with the availability of recoverable documents." Id. In that regard, while the court did not disagree that the government's response had been delayed, it noted that "the United States has acknowledged its mistake of stating that documents of certain IRS employees had been destroyed when they, in fact, had not, and the United States appears to be acting in good faith in now producing the documents necessary to evaluate plaintiff's claims." Id.

On June 19, 2013, in a joint status report, the parties notified the court that, in the government's view, it had completed production of all documents the plaintiff had requested. Def.'s Status Report 1, ECF No. 86. The report further recited that plaintiff's counsel wished to have additional time to "review the documents produced, to propound appropriate follow-up requests to the Government, and to determine what further objections he may have to the Government's means of document production or remedies that he may seek." Id. at 2. The parties therefore requested that the proceedings in this case be continued until September 5, 2013, at which point the government would submit a status report informing the court of any agreed-upon way forward. Id. On the other hand, if the parties disagreed, then each would file their own status reports setting forth their respective positions. Id.

Unfortunately, the parties were unable to agree on a way forward and each filed its own separate status report on September 5, 2013. The government stated that it had provided to counsel for plaintiff "all documents referenced in prior status reports, as well as their accompanying privilege logs." Def.'s Status Report 1, ECF No. 88. "The final production," the government represented, was made on September 4, 2013 and "included documents that had not been previously produced due to technical problems, but all those documents with technical problems that we have been able to resolve have been provided and all those with technical problems that cannot be resolved have been identified, and that information conveyed to counsel for [plaintiff]." Id. The government reiterated that, in its view, "it has fully complied with its discovery obligations; that additional, extensive discovery sought by [plaintiff] is tangential to the issues presented by this case and would be unduly burdensome; and that admissions made by [plaintiff] make this case ripe for summary judgment." Id. at 2.

The plaintiff, on the other hand, stated that it was "concerned that the same discovery problems previously arising are rearing their head again as the Defendant appears determined to 'wall off' areas of inquiry." Pl.'s Status Report, ECF No. 89. Therefore, the plaintiff proposed that it would file a second motion to compel, possibly coupled with a motion for sanctions under RCFC 37(a)(5)(A). Id.

## IV.   Plaintiff's Second Motion to Compel

The case was reassigned to the undersigned on November 25, 2013. On January 8, 2014, following a status conference, the Court issued an order setting a schedule for the briefing of plaintiff's motion to compel additional discovery and for sanctions. ECF No. 95. In accordance with that Order, plaintiff filed its motion on February 8, 2014. Mot. to Compel, ECF No. 98 [hereinafter "Pl.'s Mot."]. The Court held oral argument on the motions on January 27, 2015.

## DISCUSSION

### I.     Preliminary Observations

Plaintiff has filed lengthy memoranda, along with voluminous declarations and exhibits in support of its second motion to compel and for sanctions.  See Pl.'s Mot., ECF No. 98; Tufts Decl. of Correspondences, Feb. 7, 2014, ECF No. 97; Tufts Decl. of Deposition Costs, Feb. 7, 2014, ECF No. 96; Tufts Decl. in Supp. of Reply, March 24, 2014, ECF No. 100; Confidential Informant Decl., March 24, 2014, ECF No. 101.  Portions of its memoranda and declarations re-plow old ground.[4]  More significantly, notwithstanding the length and detail supplied in plaintiffs' filings, the Court has had some difficulty discerning from its written submissions (and from plaintiff's oral argument on January 27, 2015) exactly which additional documents (or categories of documents) plaintiff is still seeking to have produced by the government, and how any such documents are either relevant to its claims, or likely to lead to relevant evidence.

In that regard, and admittedly without the benefit of briefing on the merits, the Court remains uncertain as to the exact nature of plaintiff's current claims.  Plaintiff has never contended, for example, that the IRS did in fact recover back taxes based on the information plaintiff provided, and the government has produced several declarations from IRS officials that it did not.  Further, plaintiff does not appear to be making the claim that the judge previously assigned to this case concluded might fairly be read from its complaint:  that when the IRS allegedly threatened to "proceed" or "perform" on the Reward Agreement with plaintiff, the IRS was threatening not to either not protect plaintiff's identity or not pay plaintiff any reward even if back taxes were recovered.  Opinion on MTD at 15.  Rather—despite counsel's somewhat ambiguous assertions to the contrary at the oral argument—it now seems clear that plaintiff's allegation is that the IRS threatened that it would not conduct or complete any investigation based on the information that plaintiff provided, unless plaintiff agreed to modify the reward provisions of the Reward Agreement.[5]  This, of course, is precisely the claim that the previous judge already found insufficient to support a cause of action for anticipatory repudiation.[6]

---

[4] For example, among plaintiff's arguments is a request that this Court revisit certain attorney client privilege determinations made by the prior judge, on the grounds that the recent production of documents by the government has revealed that the documents found privileged were more important than previously understood.  Pl.'s Mot. 5 n.6, 8, 11-13.

[5] At oral argument, the Court repeatedly asked counsel for plaintiff to clarify the nature of the IRS actions that plaintiff was alleging constituted an anticipatory repudiation of the Reward Agreement.  Counsel agreed that a threat by IRS officials not to investigate would not constitute an anticipatory repudiation of the contract.  Or. Arg. Tr. 7:15-8:7, 11:21-12:5.  And while he asserted that "the threat of nonperformance was much larger than that" (id. at 8:11-12) he never articulated to the Court's satisfaction the components of this allegedly "much larger" threat of nonperformance.

[6] To be sure, in plaintiff's second amended complaint (which was filed subsequent to the prior judge's denial of the government's motion to dismiss), plaintiff also appears to be alleging that

The basis for plaintiff's allegation that the government violated the implied duty of good faith and fair dealing in its interactions with the plaintiff is also murky.  "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Metcalf Constr. v. United States, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 (1981)).  "The covenant [of good faith and fair dealing] imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005).  "Both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing." Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 820 n.1 (Fed. Cir. 2010).

In general, "what th[e] duty entails depends in part on what [the] contract promises (or disclaims)." Precision Pine, 596 F.3d at 830.  Thus, the "implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." Metcalf Constr., 742 F.3d at 991 (quoting Precision Pine, 596 F.3d at 831).  In short, as the Federal Circuit has observed, "[t]he implied duty of good faith and fair dealing is limited by the original bargain," as it "prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." Metcalf Constr., 742 F.3d at 991.

In the second amended complaint, the plaintiff recites that the duty of good faith and fair dealing requires that the government "avoid the taking of any actions that may unreasonably delay or hinder any contractual performance," ¶ 62, but the complaint fails to specify what actions plaintiff alleges the government took to delay or hinder either its own contract performance or plaintiff's.  Instead, plaintiff alleges that the government "acted with bad faith insofar as it made repeated statements and representations to induce Plaintiff to proceed without counsel and to wrongfully attempt to abrogate the Reward Agreement, after having obtained the Plaintiff's identity," and that "[u]p to and including the time of Defendant's repudiation and refusal, Plaintiff was ready, willing, and able to continue performance of the Reward Agreement." Second Am. Compl. ¶¶ 63-64.

Again reading the allegations in the complaint liberally, the prior judge assigned to this case concluded that plaintiff's complaint stated a claim that the government violated the duty of good faith and fair dealing by alleging that—after plaintiff had fully performed under the

_____

the IRS repudiated the contract by failing to respond to plaintiff's requests for "reassurances" of IRS' intent to perform under the contract.  Second Am. Compl. ¶¶ 44, 50, 53, 56; Oral Arg. Tr. 10:18-11:4.  But with respect to this new claim as well, it appears that the reassurances sought related to whether the IRS intended to use the information that plaintiff provided to investigate the taxpayers plaintiff identified, not whether IRS intended to pay him any reward money that might become due or protect plaintiff's identity.

contract—the IRS sought to force a renegotiation of the contract terms by threatening not to pay plaintiff any reward money that might become due under the agreement unless plaintiff agreed to modify the agreement.  Opinion on MTD at 20-21.  But as with its anticipatory repudiation claim, it now appears clear that the plaintiff is not alleging that the IRS threatened not to pay plaintiff any reward money; rather, plaintiff is alleging that the IRS threatened not to pursue the return of any back taxes based on the information plaintiff provided unless plaintiff agreed to a modification of the terms of the agreement.[7]

The merits of plaintiff's claims, of course, are not currently before the Court.  Nonetheless, in exercising its discretion whether and to what extent to direct further discovery, the Court must take into consideration whether the additional proposed discovery is relevant to the plaintiff's claims (or at least reasonably calculated to lead to relevant evidence) within the meaning of Rule 26(b).  The lack of clarity in plaintiff's presentation of its claims has not been helpful to that endeavor.

At the same time, the Court also recognizes that—as the government itself has acknowledged—the IRS's initial document production efforts left much to be desired.  In addition, the Court believes that plaintiff was prejudiced to some extent by the shortcomings of the government's efforts.  In particular, plaintiff was hampered in its ability to conduct effective depositions of several of the individuals it has identified as key actors in this matter by the government's failure to produce documents in a timely fashion.

## II.    Plaintiff's Motion to Compel

With the above considerations in mind, the Court turns to plaintiff's motion to compel and for sanctions.  For ease of reference, the Court breaks its discussion into three categories: (1) plaintiff's challenges to the defendant's assertion of attorney-client privilege in connection with both the pre-December 2012 production and the most recent production; (2) plaintiff's

---

[7] At the oral argument on plaintiff's motion to compel, the Court attempted to secure greater clarity from plaintiff's counsel regarding the basis for his claim of a violation of the duty of good faith and fair dealing.  The Court's attempts were less than successful.  See Oral Arg. Tr. 11-19.  Counsel variously asserted that proof of the following facts would support such a claim:  (1) that the IRS failed to communicate with plaintiff, id at 11:5-12 (citing Conway v. United States, 56 Fed. Cl. 572 (2003)); (2) that "behind the scenes" at the IRS between 2006 and 2008 its personnel were discussing how to modify the Reward Agreement to retain more discretion for the agency, id. at 14:24-15:9; (3) that after plaintiff declined to modify the agreement, the agency "put him in the dark" and their "conduct shifted to how do we then deal with this situation," id. at 15:10-17; (4) that IRS personnel were working on drafts of a modified agreement starting in February 2006, but they never communicated the proposed modifications to the plaintiff , id. at 15:23-25); (5) that the IRS engaged in conduct that was aimed at dissuading plaintiff from having counsel, id. at 18:9-11; and (6) that IRS officials talked amongst themselves about "scrap[ping]" the Reward Agreement.  Id. at 22:24-23:12.

request that the government undertake additional document searches; and (3) plaintiff's request for sanctions against the government in the form of an award of costs.

## A.      Attorney-Client Privilege

Plaintiff does not challenge the sufficiency of the privilege logs the government has supplied since the court granted in part plaintiff's first motion to compel.  Instead, plaintiff challenges the government's assertion of attorney-client privilege with respect to a number of the documents identified in the logs, including some documents for which the previous judge assigned to this case had already found the privilege properly invoked.  Pl.'s Mot. 14-21.  Plaintiff argues that the privilege is either inapplicable or that it should be pierced based on either the crime/fraud exception or on plaintiff's allegedly "compelling need" for the privileged material.  Id. at 21, 39-40.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997).  This protection encompasses "the attorney's thought processes and legal recommendations."  Id. (quoting Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985)).  Whether the attorney-client privilege applies depends on the facts and circumstances of a particular case.  Upjohn Co. v. United States, 449 U.S. 383, 396 (1981); In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000).

Plaintiff's challenges to the government's assertion of privilege fall into three buckets.  First, plaintiff argues that several documents that were redacted to delete references to advice provided by counsel are not protected because neither the sender nor the recipient of the documents is an attorney.  Pl.'s Mot. 15.  The Court has examined these documents in camera and concludes that plaintiff's argument is without merit because, although the sender and recipient are not attorneys, the redacted portions of the documents contain passages that communicate the advice of counsel.  The forwarding of documents containing counsel's advice by non-attorneys in an organization does not strip the advice contained within them of its privileged nature.  United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2320-21 (2011).  See, e.g., In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity."); Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A., 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (observing that the attorney-client privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation").

Plaintiff's second contention is that it has established a "compelling need" for all communications among IRS officials that occurred after June 2005, because, according to plaintiff, the documents that the government has recently produced show that Agent Tyska started to act in "bad faith" at the direction of his superiors, including UPM Paul Serletti, in June 2005.  Pl.'s Mot. 14-15, 17-21.  "Compelling need" may serve as a basis for overcoming the deliberative process privilege, Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1307 (Fed. Cir. 2006), and sufficient need may also serve as a basis for overcoming the work product

privilege.  Upjohn Co., 449 U.S. at 397-98 (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)).  But the Court is unaware of any support for the creation of an exception to attorney-client privilege based on the importance of a privileged communication to the party seeking its disclosure (and plaintiff has not cited any).  For that reason, plaintiff's arguments seeking to pierce the privilege based on the perceived importance of the documents to its case (including those arguments which would require the Court to revisit privilege determinations made by the prior judge), are unavailing.

Plaintiff's final argument is that "certain materials described in the privilege log, even as amended, are not properly withheld as privileged" because they "were produced in the furtherance of [the alleged] misconduct."  Pl.'s Mot. 39 (emphasis in original); see also id. at 6 n.7, 13, 17-21 (observing that certain documents identified in the government's privilege log were created during a period of time when "fundamental misconduct" occurred).  To the extent that this argument is intended to invoke the "crime-fraud" exception to attorney-client privilege, the argument is devoid of merit.

It is well established that the attorney-client privilege does not extend to "communications made for the purpose of getting advice for the commission of a fraud or crime."  United States v. Zolin, 491 U.S. 554, 563 (1989) (internal quotation marks and citations omitted).  In order to invoke this "crime-fraud" exception the party challenging the assertion of attorney-client privilege must "make a prima facie showing that the communication [at issue] was made 'in furtherance of' a crime or fraud."  Spalding Sports, 203 F.3d at 807 (citations omitted).

No such prima facie showing has been made in this case.  There is no allegation of crime or fraud at all with respect to the government's relationship with the plaintiff; rather, the claim is one for breach of contract.  To be sure, the Federal Circuit has indicated in a non-precedential decision that the crime-fraud exception may be broad enough to encompass documents that are "incident" to alleged "fundamental misconduct."  In re United States, 321 F. App'x. 953, 956 (Fed. Cir. 2009) (per curiam) (unpublished) (internal quotation marks omitted); see, e.g., Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc) (stating that in a patent case, "[a] finding of inequitable conduct may . . . prove the crime or fraud exception to the attorney-client privilege").  But even then, to pierce the privilege, the very act of making the privileged communication must constitute an element of the misconduct alleged; it is not enough that it is relevant to showing the misconduct.  Cf. In re United States, 321 F. App'x. at 956 (affirming the decision by the United States Court of Federal Claims that certain otherwise privileged documents should be produced because the documents were the very ex parte contacts that constituted the breach of contract).

In this case, plaintiff's argument is that the documents for which privilege is claimed were created during a window of time when plaintiff alleges that IRS personnel (including several attorneys) were conspiring to force the plaintiff to agree to a modification of the Reward Agreement.  Pl.'s Mot. 13, 17-21.  Plaintiff further alleges (as best as the Court can understand) that the documents generated during this period would be highly relevant to its inquiry into this "fundamental misconduct."  Id.  Such claims do not suffice to satisfy the plaintiff's prima facie burden under the crime-fraud exception because they do not allege that the communications

themselves constituted the "misconduct," as was the case in In re United States.  Accordingly, the Court rejects the plaintiff's argument that the crime-fraud exception defeats the government's assertions of attorney-client privilege in this case.

### B.      Plaintiff's Request for Additional Documents

Plaintiff has moved to compel the production of additional documentation falling within five categories:  (1) documents secured from searches of an additional 65 individuals, whose names plaintiff secured from an organizational chart for the IRS' Criminal Division during the years 2005-2008, Pl.'s Mot. 23-24; (2) copies of any IRS analyses of the [. . .], as well as the [. . .], id. at 28-29, [. . .]; (3) three documents referenced in an audio recording involving an undercover operation triggered by the plaintiff's disclosures to the IRS, id. at 23; (4) the "green card" or "letter of deactivation" prepared by Agent Tyska in reference to the plaintiff, id. at 24; and (5) documents concerning an alleged investigation of a [. . .].  Id. 8-11.  Each of these requests is addressed below.

### 1.      Searches of the Files of Additional IRS Employees

At the hearing on plaintiff's motion, the Court sought clarification from plaintiff regarding its request for the production of documents in the possession of the sixty-five individuals counsel identified by referring to an IRS organizational chart.  See Pl.'s Mot. 23-24. Based on counsel's explanations, Oral Arg. Tr. 30-33, 35-36, 50-53, the court understands that plaintiff seeks access to additional records in order to determine whether other individuals at higher levels of the chain of command in IRS's Criminal Investigation Division may have been involved in what plaintiff alleges was a bad faith effort by Paul Serletti to "scrap" the IRS' Agreement with plaintiff.  Oral Arg. Tr. 28.  The government, for its part, contends that it has "searched the appropriate files and found no evidence that the proposed agreement ever went any further than UPM Serletti."  Def.'s Resp. 25, 33 (contending that "the 'paper trail' regarding upper-level IRS management involvement in the desire to seek modification of the agreement from [plaintiff] has been exhausted").

The Court has no reason to doubt the government's representations regarding the likelihood that additional searches will yield documents suggesting the involvement of other IRS employees and officials in the behind-the-scenes discussions regarding the potential modification of the Reward Agreement.  And the Court is not unsympathetic to the government's contentions that the nexus between the additional searches plaintiff seeks and the allegations in plaintiff's complaint seems tenuous.  Nonetheless, the Court believes it would be appropriate to indulge the plaintiff's requests for a few additional searches, particularly in light of the missteps by the government earlier in this case.

To that end, at the hearing in this case, the Court suggested that counsel for plaintiff consider whether his request could be narrowed by identifying for additional searches three key personnel on the list he supplied.  Oral Arg. Tr. 53.  Counsel agreed that it would be possible to do so, and the Court concludes that such compromise is a reasonable one.  Accordingly, plaintiff's motion to compel the searches of the records of additional IRS employees for

13

information related to its claims is **GRANTED IN PART**.  Plaintiff may specify the names of three additional IRS employees for whom the government shall conduct document searches.

### 2.    Franchisee Tax Returns

Plaintiff has requested information regarding an IRS analysis of certain [. . .] returns which it believes was referenced in a close out memorandum written in connection with the ending of a 2007 undercover operation.  Pl.'s Mot. 22.  See Def.'s App. 13-17.  That memorandum stated as follows:

> Federal income tax returns were ordered and analyzed prior to the undercover operation.  At this time, additional [. . .] are being requested to further analyze and corroborate allegations that the individual [. . .] may be underreporting gross receipts.

Def.'s App. 17.  Specifically, plaintiff requests the analysis of the "additional returns."  Pl.'s Mot. 22-23.  According to the Declaration of James Cortier, the Special Agent who wrote the memorandum, he did not intend to suggest in this passage that he had in fact ordered copies of the [. . .] of the [. . .] and that, in fact, he did not do so.  Def.'s App. 10 ¶ 5.  He further stated that he was involved in no further investigations of any [. . .] based on the information plaintiff provided and that there was no reason to believe such investigations were pursued by others in his office.  Id. at ¶¶ 3, 6.  Therefore, there does not appear to be additional documentation to be produced that would be responsive to plaintiff's request.  Plaintiff's motion to compel production of such documents is therefore **DENIED**.

### 3.    Documents Referenced in the Audio Recordings

The plaintiff, as noted above, seeks the production of three documents that plaintiff states were referenced in the audio recording of the undercover operation.  Pl.'s Mot. 23.  Plaintiff identifies these documents as a "form requested from one of the principals for one of the targeted groups"; a "[. . .] provided to one of the undercover agents"; and the undercover agent's "translation of [. . .] telephone conversations the undercover agent had with a [. . .] as provided to her supervisors."  Id.  The government represents that it has conducted a search of the hard files and computers of the relevant agents and spoken to the agents and that it has not uncovered such documents.  Def.'s Resp. 28.  The Court has no basis for disbelieving that representation.  Therefore, the Court **DENIES** plaintiff's motion to compel production of these documents.

### 4.    "Green Card" or "Letter of Deactivation"

Plaintiff has requested that the government supply copies of a "letter of deactivation" that is referenced in an internal memorandum that Special Agent Tyska prepared in connection with the closure of plaintiff's file.  Pl.'s Mot. 24.  Although the letter is referenced in a memorandum, and although the memorandum indicates that the letter was mailed to the plaintiff, Def.'s App. 22, plaintiff never received such letter.  Def.'s Resp. 27.  In addition, the government asserts that neither its search of Special Agent Tyska's files, nor its search through the files of the other custodians using the relevant key words, uncovered such a letter.  Def.'s Resp. 27.  In light of

those representations, the plaintiff's request to compel production of the deactivation letter is
**DENIED**.

### 5.   The Second [. . .]

Plaintiff requests additional discovery based on a newly-provided three-page document
(titled "[. . .]") that counsel claims alerted plaintiff for the first time that the IRS had conducted
an investigation of a "[. . .]." Pl.'s Mot. 8-11, Pl.'s Mot. Ex. D.  Plaintiff requests that the
defendant search for information concerning any investigations pursued by the IRS as to [. . .].
Pl.'s Mot. 8.

In its response, the government represents that it "has not hidden the information related
to the mention of [. . .] from [plaintiff]" because it provided to plaintiff a shorter version of the
three-page summary in May 2012.  Def.'s Mot. 23 (citing Def.'s App. 110).  Furthermore, the
government states that its searches "turned up no 'hits' on [. . .] that have not already been
provided."  Id.  According to the declarations of Special Agents Tyska and Cortier, because
[. . .], the investigation of that [. . .] would have required the special agent "to go through certain
protocols to obtain its tax information," and both agents specified that they would have
remembered if they "had gone through such protocols."  Def.'s App. 5, ¶ 4 (Declaration of
Special Agent Tyska); see also Def.'s App. 11, ¶ 7 (Declaration of Special Agent Cortier). The
Court has no basis for disbelieving the government's representations that it did not purposefully
withhold information of its investigation of the [. . .] and that it has provided all documents
relating to [. . .].  Therefore, the Court **DENIES** plaintiff's request for more searches related to
the second [. . .].

### C.   Motion for Sanctions

In its December 11, 2012 Order, the judge previously assigned to this case gave the
plaintiff an opportunity to file a motion under RCFC 37(a)(5)(C) requesting an apportionment of
the reasonable expenses plaintiff incurred in bringing the first motion to compel because the
motion was granted in part and denied in part.  See 108 Fed. Cl. at 150.  Prior to the deadline the
court set for requesting such an apportionment, it suspended all deadlines in the case in order to
allow the government to continue its rolling production of electronically stored information.
Order at 1, Jan. 1, 2013, ECF No. 68.

In its current motion to compel and for sanctions, plaintiff cites RCFC 37(a)(5)(A).  Pl.'s
Mot. 25.  Rule 37(a)(5)(A) governs in cases where a motion to compel is either granted in full or
where the discovery sought in the motion is provided after the motion is filed.  In such cases,
"the court must, after giving an opportunity to be heard, require the party or deponent whose
conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making
the motion, including attorney's fees," unless "the movant filed the motion before attempting in
good faith to obtain the disclosure or discovery without court action;" or "the opposing party's
nondisclosure, response, or objection was substantially justified;" or "other circumstances make
an award of expenses unjust."  RCFC 37(a)(5)(A) (emphasis added).  In contrast, under RCFC
37(a)(5)(C), governing cases where a motion to compel is granted in part and denied in part, the

award of expenses is discretionary; thus the rule provides that the court "<u>may</u>, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." (emphasis added).

The Court believes that the applicable rule here is, as the prior judge instructed, RCFC 37(a)(5)(C). While it is true that the government began supplying some additional documents to plaintiff after plaintiff filed its motion to compel, but before the court ruled on it, the continued production of those documents was mandated by the court's order. <u>See</u> 108 Fed. Cl. at 127 n.2.

Along with its opening brief in support of its motion to compel, the plaintiff submitted an affidavit of costs for $15,124.61 in connection with the depositions of Paul Serletti, the two undercover agents, Marsha Griffith, Ashley Crystal, James Cortier, AngeloTroncoso, and Casimir Tyska. Tuft's Aff. of Costs, Feb. 7, 2014, ECF No. 96. This affidavit was supported by an itemized list of the expenses incurred, along with copies of receipts. <u>Id.</u> at Ex. A. Plaintiff argues that all of these expenses should be reimbursed because it will be required to incur the same expenses again to retake these depositions in light of the documents the government produced both after the motion to compel was filed and after the court issued its ruling granting the motion in part. Pl.'s Mot. 28-38.

In its response, the government agrees that "a party should be made whole for any costs it reasonably incurred re-taking depositions that must be re-taken as a result of inadequate discovery responses." Def.'s Resp. 34. It argues, however, that plaintiff has not sufficiently "linked the costs in its Affidavit of Costs to the discovery problems alleged." <u>Id.</u> And in any case, the government contends, the documents produced after the court's December 2012 order were "in large part, documents that had already been provided in 2012 but were being produced again in 2013 in order to ensure completeness . . . . What is important is the number of new and material documents provided to [plaintiff] in 2013." Def.'s Resp. 34 n.24.

The Court concludes that some award of costs to plaintiff is appropriate based on the government's failure to timely produce records belonging to the male undercover agent and to former IRS employees. Thus, plaintiff has made a sufficient showing that its ability to effectively depose the two undercover agents was prejudiced by the government's failure to produce relevant documents contained in the male undercover agent's computer files prior to that deposition. Further, based on the representations made in counsel's declaration attached to plaintiff's reply brief, it appears to the Court that counsel's ability to effectively question Paul Serletti, as well as his supervisor, Marsha Griffith, and Special Agent Tyska, may have been hampered by the lack of certain emails and attachments which were subsequently produced by the government.

On the other hand, the plaintiff has failed to identify any basis for concluding that counsel's ability to effectively depose Ashley Crystal, James Cortier, or Angelo Troncoso would have been enhanced in any material way had plaintiff had in its possession the documents that have since been produced by the government. Accordingly, the Court will award the plaintiff $12,517.75, representing the expenses counsel has identified he incurred to travel to the depositions of the two undercovery agents and of Mr. Tyska, Ms. Griffith and Mr. Serletti.

Plaintiff did not request an award of attorney fees in its original motion for sanctions. Instead, in a lengthy affidavit submitted along with plaintiff's reply brief, counsel asserted that he had spent some 209 hours on the case between August 2012 and December 31, 2012, of which 20.6 hours were spent preparing the first motion to compel filed in October 2012. Tufts Decl. 38, March 24, 2014, ECF No. 100. Because the plaintiff did not clearly raise counsel's attorney fee claim in plaintiff's opening brief, the Court gave the government leave to file a surreply to address the allegations in the declaration accompanying plaintiff's reply brief. Order at 1, Apr. 11, 2014, ECF 106. In its surreply, the government opposes an award of attorney fees to plaintiff, arguing that the fee request was waived because it was not raised in the plaintiff's opening brief and/or that plaintiff is not entitled to an award of fees because plaintiff failed to submit adequate documentation that demonstrates that the fee request is reasonable. Def.'s Surreply 1, Apr. 17, 2014, ECF No. 107.

Attorney fees for sanctions pursuant to RCFC 37 or the identical provision of the Federal Rules of Civil Procedure must be "reasonable." RCFC 37(a)(5)(C) (referencing "reasonable expenses"); RCFC 37(b)(2)(C) (same); Tollet v. City of Kemah, 285 F.3d 357, 367-68 (5th Cir. 2002); Martin v. Brown, 63 F.3d 1252, 1263 (3d Cir. 1995). The burden of proving reasonableness lies with the moving party. Kister v. District of Columbia, 229 F.R.D. 326, 329 (D.D.C. 2005). In order for the Court to evaluate what costs and expenses are reasonable, it must be provided with sufficiently detailed time records to evaluate whether the costs claimed are appropriate. Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (Equal Access to Justice Act matter). Fees are not permissible for work that is "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

It is clear that plaintiff's existing submission is insufficient to support an award of fees. The request for fees is not supported by any billing statements at all. See generally Tufts Decl., Mar. 24, 2014, ECF No. 100. At the hearing in this case, the Court indicated that it would consider giving plaintiff a second opportunity to submit additional documentation to support its claim for 20.6 hours of attorney time spent on preparing the first motion to compel. Oral Arg. Tr. 70. Upon further reflection, however, the Court is of the view that, under the circumstances of this case, an award of attorney fees to the plaintiff is unwarranted.

Thus, for the reasons set forth above, the Court has determined that the plaintiff's second motion to compel is largely without merit. Were the Court to direct an award of attorney fees to plaintiff based on its partial success in connection with the first motion to compel, fairness would require the court to give the government an opportunity under Rule 37(a)(5)(C) to seek an apportionment of reasonable expenses for the work it has performed in connection with its response to the second largely meritless motion to compel. In the Court's view, however, further rounds of briefing devoted to debating past discovery disputes would be counter-productive and would unduly delay the resolution of this case on its merits. Therefore, the Court concludes that both parties should bear their own costs in connection with the second motion to compel and that the plaintiff's recovery of costs with respect to the first motion shall be limited to the expenses it incurred with respect to those depositions identified above that counsel states that he will need to re-convene.

**CONCLUSION**

On the basis of the foregoing, plaintiff's motion to compel and for sanctions is **GRANTED IN PART** and **DENIED IN PART**.  The government shall reimburse the plaintiff a total of $12,517.75 for expenses related to the depositions of the two undercover agents, Ms. Griffith, Mr. Serletti, and Mr. Tyska.

Further, within one week of the date of this Order, the plaintiff shall identify for the government no more than three additional IRS officials for whom it requests production of documents (if it has not already done so).  The plaintiff may also depose those officials to the extent that any documents produced indicate that such depositions would provide relevant information within the meaning of Rule 26(b).  In addition, plaintiff may reconvene the depositions of the two undercover agents, Ms. Griffith, Paul Serletti, and Agent Tyska for purposes of addressing matters raised in the document production that occurred subsequent to the time of their original depositions.

Discovery in this matter shall be completed by August 7, 2015.  In the interim, the parties shall file a joint status report with the Court every 30 days beginning on May 15, 2015.  In addition, the parties shall file a joint status report within 30 days after the close of discovery, suggesting a schedule for further proceedings in this matter.

The parties are strongly encouraged to resolve any discovery disputes going forward without the Court's intervention.

The Clerk of the Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge